PER CURIAM.
M.R. appeals an order dismissing her petition for paternity. The trial court dismissed the petition under authority of Department of Health and Rehabilitative Services v. Privette, 617 So.2d 305 (Fla.1993), after deciding that the paternity action was not in the best interest of the child. We conclude that the *630 child’s guardian ad litem should have been disqualified, and reverse the dismissal order.
Petitioner-appellant M.R. is the mother of the minor child, R.R. R.R. was born while the mother was married to Intervenor I.R., the former husband. The husband and wife divorced in 1989 while the child was very young. The divorce decree states that R.R. is a child of the marriage. By agreement the former "wife was given sole parental responsibility for R.R. The former husband was granted visitation rights and was to pay child support.
Subsequently the former husband was convicted of a federal crime. He was incarcerated in federal prison on a twelve and one-half year sentence. He filed a motion in the original divorce action to terminate his child support obligation on the ground that he no longer had income from which to pay it.
The mother then filed this paternity action. In it she contends that Respondent A.B.C. is the natural father of the minor child. She alleges that during a time in which she was separated from her husband, she had a relationship with A.B.C. and the minor child was conceived at that time. She alleges that A.B.C. provided some support for the minor child, but that he has ceased doing so.
The trial court conducted a preliminary inquiry as required by Privette, 617 So.2d at 308-10. Such a preliminary hearing is required in any case in which a paternity proceeding is filed on behalf of a child who was bom during a marriage. The trial court concluded that it would not be in the best interest of the child for the paternity action to proceed, and dismissed the case. The mother has appealed.
R.R. was born while M.R. and I.R. were married. In Privette, the Florida Supreme Court considered what showing must be made in order to justify requiring the putative father to take a blood test to establish (or refute) paternity, where the minor child was bom during the course of a marriage. The court stated:
Once children are bom legitimate, they have a right to maintain that status both factually and legally if doing so is in then-best interests. The child’s legally recognized father likewise has an unmistakable interest in maintaining the relationship with his child unimpugned, such that his opposition to the blood test and reasons for so objecting would be relevant evidence in determining the child’s best interests.
Thus, before a blood test can be ordered in cases of this type, the trial court is required to hear argument from the parties, including the legal father if he wishes to appear and a guardian ad litem appointed to represent the child....
... The trial court hearing a petition for a blood test is required: (a) to determine that the complaint is apparently accurate factually, is brought in good faith, and is likely to be supported by reliable evidence, and (b) to find that the child’s best interests will be better served even if the blood test later proves the child’s factual illegitimacy. The one seeking the test bears the burden of proving these elements by clear and convincing evidence.
617 So.2d at 307-08 (citations and footnotes omitted).
Technically, all that was before the court in Privette was the question of whether the putative father would be required to submit to a blood test. We agree with the trial court, however, that the Privette decision requires the trial court to make a determination whether the paternity action itself should go forward, or be dismissed. Once the court makes a decision that the paternity action is not in the best interest of the child, then the entire paternity action must be dismissed.
The mother does not necessarily disagree with that reading of Privette, but the mother argues that she has a right to a jury trial during the Privette hearing. She points out that in B.J.Y. v. M.A, 617 So.2d 1061 (Fla.1993), the Florida Supreme Court held that there is a right to a jury trial in a paternity action. Id. at 1064. She reasons that since the trial court conducting the Privette hearing must make certain factual determinations, it follows that there is a right to have a jury make the required findings.
We agree with the trial court that there is no right to a jury trial during a *631 Privette hearing. The B.J.Y. ease involved a child born out of wedlock, see B.J.Y. v. M.A., 594 So.2d 816, 817 (Fla. 1st DCA 1992), approved, 617 So.2d at 1061, 1064, and thus did not present any issue involving Privette. As we view the matter, the Privette hearing is a preliminary determination which, like other pretrial matters, is addressed to the trial judge and is not a matter to be heard by ■ a jury.
Turning now to our area of disagreement with the trial court, the Privette decision requires that a guardian ad litem be appointed to represent the child for purposes of the Privette hearing. 617 So.2d at 808. “The child as represented by the guardian ad litem is an indispensable party, since the child’s best interests are the primary issue of the proceeding.” 617 So.2d at 308 n. 5.
In this case the trial court followed Pri-vette by appointing a guardian ad litem. The guardian ad litem who was chosen had previously served as the guardian ad litem for the children during the divorce proceeding between M.R. and I.R. Consequently, it was a logical step to employ the same guardian ad litem for the paternity action.
During the course of the paternity proceedings below, the guardian ad litem was himself sued in a paternity action. The guardian ad litem thus found himself in the position of taking a position in this ease on how Privette should be interpreted, while at the same time some of the identical issues arose in the guardian ad litem’s own paternity ease. Under the circumstances, we think there was, at the least, an appearance of a conflict of interest and quite possibly an actual conflict of interest. It is our view, therefore, that the mother’s motions to disqualify the guardian ad litem should have been granted. The child is entitled to the services of an impartial guardian ad litem. Consequently, we must reverse the dismissal order and remand with directions to appoint a new guardian ad litem, and conduct a new hearing.
Since there must be further proceedings on remand, we address several issues which are likely to arise. As previously stated, Privette requires the court:
(a) to determine that the complaint is apparently accurate factually, is brought in good faith, and is likely to be supported by reliable evidence, and
(b) to find that the child’s best interests will be better served even if the blood test later proves the child’s factual illegitimacy.
617 So.2d at 308 (footnote omitted). A finding should be made on each of these points.
With regard to subdivision (a), the court found “that no irrefutable facts or tests have been introduced into evidence to prove that the Intervenor [former husband] is not the biological father of the child.” (Footnote omitted; emphasis added). Respectfully, the court misapprehended the legal standard by requiring plaintiff to produce “irrefutable” proof at a Privette preliminary hearing. One purpose of the Privette hearing is to decide whether blood tests will be ordered. At this preliminary stage the plaintiff need not show irrefutable proof; absent genetic testing, irrefutable proof regarding paternity will usually be impossible to obtain. Instead, subdivision (a) looks for a preliminary showing of an apparently factually accurate complaint, brought in good faith, and likely to be supported by reliable evidence.
Subdivision (a)’s inquiry about good faith focuses on the purpose for which the action was brought. For example, bringing a paternity action in order to obtain needed child support is a proper purpose. An example of an improper purpose is found in Boyles v. Boyles, 95 A.D.2d 95, 466 N.Y.S.2d 762 (1983), where the former wife raised the paternity issue in an effort to terminate the former husband’s custody of the child and obtain exclusive custody for herself. Id. at 98, 466 N.Y.S.2d at 765.
With regard to subdivision (b), the court must make a finding regarding the best interests of the child. The Privette decision contemplates that the trial court will look at the totality of the circumstances in deciding whether it is in the child’s best interests for the paternity action to go forward. In Pri-vette the court gave as one example:
We have few facts before us, but the record at least suggests that the child has been abandoned by the legal father and *632 •with its mother is living in poverty. If this state of affairs was properly established, the stigma of illegitimacy might well be outweighed by the child’s need for support, especially in light of any abandonment by the legal father.
617 So.2d at 309-10.
In the present ease, the guardian ad litem and the court focused on the relationships between the minor child, the parties to this case, and family members. It was proper to do so.
However, the guardian ad litem severely criticized the mother as having filed this paternity action for money, that is, because the mother is seeking child support. The guardian ad litem misapprehended the legal standard. The point of a paternity action is to obtain needed child support for a minor child. In the example quoted above, the Florida Supreme Court pointed out that one relevant consideration in a Privette hearing is whether the minor child has need of support and whether the mother has the ability to provide that support. The guardian ad litem nowhere addressed this factor, nor did the trial court in its findings. The support question is one of the factors which should be considered by the guardian ad litem in reporting to the court, and is a factor which the court should take into account in deciding the best interests of the child.
We emphasize that in making the above observations we do not express any view on the merits of the Privette proceeding, or the relative weight to be assigned to any of the factors.
The mother also complains that she was not allowed to obtain discovery regarding payments allegedly made by A.B.C. to I.R. A.B.C. does not quarrel with the relevancy of that information, but argues that the discovery was properly denied because it came too late. Since there must be a new hearing, the mother is entitled to discovery on this point, provided she pursues such discovery promptly-
15] During the course of the proceedings below, an injunction was entered which limited the right of the mother to disclose facts about the paternity action. The trial court’s final order acknowledges that the injunction prohibited the mother from telling fact witnesses that this case was a paternity action. We agree with the mother that she was entitled to a fair opportunity to obtain witnesses for her side of the ease, and that the injunction should not have been entered. According to the trial court’s order, all injunctions in this case were dissolved upon entry of the final order. We address the point only to state that the restrictions on the mother’s ability to prepare for trial should not be reentered now that a new hearing has been ordered.*
The order under review is reversed and the cause remanded for further proceedings consistent herewith.

 Since an injunction evidently was also entered in the preexisting dissolution of marriage case, steps should be taken to assure that no conflicting orders remain outstanding in the dissolution case.