714 So.2d 1210 (1998)
Greg CONTINO, as Personal Representative of the Estate of Charles A. Contino, Appellant,
v.
In re The ESTATE OF Charles A. CONTINO, Appellee.
No. 97-2180.
District Court of Appeal of Florida, Third District.
August 12, 1998.
*1211 Stephen N. Rosenthal, Miami; Mark C. Katzef, Aventura, for appellant.
Ronald E. Temkin, Hallandale; Charles Goldman, Hollywood, for appellee.
Before JORGENSON, COPE and GODERICH, JJ.
PER CURIAM.
Greg Contino, as Personal Representative of the Estate of Charles A. Contino, appeals from an order denying his petition for authorization for DNA blood typing, and from an order determining that Daniel Contino is a child of the decedent and entitled to take a share of the estate. We affirm.
In October 1996, Greg Contino filed a petition for administration of the estate of his father, Charles A. Contino, seeking to be named personal representative. The court appointed Greg Contino as personal representative, issued letters of administration, and issued a schedule of beneficiaries listing Greg Contino, Anthony Contino, Mark Contino, Christopher Contino, and Angela Massey as such.
In December 1996, Daniel Contino filed a Petition to Determine Heirs stating that he is a rightful heir of the decedent and attaching a copy of his Birth Certificate. Daniel Contino also filed a Motion to Remove Personal Representative alleging that Greg Contino had deliberately tried to exclude him from the estate. In March 1997, the court granted Daniel Contino's Petition to Appoint Guardian Ad Litem to Determine Heirs. Greg Contino filed an answer to the motion to remove personal representative and to the petition to determine heirs.
In May 1997, Greg Contino filed a Petition for Authorization of DNA Blood Typing, pursuant to sections 742.10 and 742.12, Florida Statutes (1997), stating that all of the beneficiaries denied that Daniel Contino was an heir. This motion was heard, and on June 13, 1997, the trial court entered an order denying the motion.
On June 13, 1997, the Guardian Ad Litem filed her Initial Report giving a detailed account of the underlying facts. The facts, as found by the Guardian Ad litem, are summarized below.
Charles A. Contino, the decedent, was married to Barbara Burkhalter on July 22, 1950. During their marriage, five children were born: Anthony, Mark, Christopher, Angela, and Daniel.[1] Daniel was born on February 23, 1966, and Charles A. Contino is listed as Daniel's father on his birth certificate and on his baptism certificate.
In December 1966, Charles A. Contino filed a complaint for divorce against Barbara wherein he alleged that there were five children born of the marriage, one of which was Daniel. The complaint alleged that Barbara had "taken up an extra-marital relationship with a young man whom she has been meeting and seeing clandestinely...." The complaint further alleged that Barbara "is not a fit and proper person to care for the minor children of the parties." The parties executed a separation agreement wherein they agreed to the following relevant provisions:
3. The care, custody and control of the minor children of the parties, namely, Anthony, Mark, Christopher and Angela, shall be awarded to the Husband; that the Wife shall have the rights of reasonable visitation to and with said minor children....
4. That the care, custody and control of the infant child, Daniel, shall be awarded to the Wife; that the Husband shall have the rights of reasonable visitation to and with said minor child....
5. The Wife waives support moneys from the Husband for the care and maintenance of the minor child Daniel for the reason that the Wife disclaims the Husband's paternity and states that the Husband *1212 is not the natural father of said minor child, Daniel.
At the dissolution hearing, when Charles was asked about Daniel, "Mrs. Contino disclaims that the child is yours, is that correct?", he answered, "That is correct." Thereafter, the trial court entered a final judgment of divorce incorporating the parties' separation agreement.
After the final judgment was entered, Charles asked his attorney, Anthony Demos, to draft a last will and testament. The will provided, in pertinent part, as follows:
FIRST:
I hereby declare that I am divorced and that I have six (6) children, one by my first wife, and five by my second wife, namely: ANTHONY CONTINO, MARK CONTINO, CHRISTOPHER CONTINO, ANGELO [sic] CONTINO, GREGORY C. CONTINO, and DANIEL P. CONTINO.
SECOND:
I hereby specifically disinherit my son, DANIEL P. CONTINO, from taking any part or portion of my estate.
Although Attorney Demos called Charles on several occasions to come execute the will, Charles never did. When asked, Attorney Demos told the Guardian Ad Litem that Charles seemed reluctant to execute the will and that he believed that Charles never executed the will because he did not want to disavow Daniel.
The Guardian Ad Litem also considered letters that were allegedly written by Barbara's paramour. In these letters, Barbara's paramour seemed to acknowledge that Daniel was his child.
The Guardian Ad Litem conducted several interviews. She spoke with Daniel who stated that, until age 7, he had an ongoing relationship with Charles, despite living with his mother. He stated that, at age 7, he discovered a picture of his mother in which she was severely beaten. He suspected that Charles had caused the injuries, and he had little contact with Charles thereafter. In Daniel's teenage years, Charles asked him to help a sibling, and Daniel made himself available. In later years, he had little contact with Charles but maintained a relationship with some of his siblings. Daniel went to see Charles in the hospital when he was near death but was asked to leave by other family members. Daniel believes that the divorce proceedings were handled improperly, that his mother was not independently represented, and that she was mentally ill and in no condition to competently represent herself. Daniel believes that Charles is his natural father.
The Guardian Ad Litem also interviewed Mark Contino who characterized Daniel as an "opportunist." Mark believed that the extramarital affair from which Daniel was born was the cause of his parents' divorce. He claims that he was present when his mother told his father that Daniel was not his son. At his deposition, he stated, "I was in the living room at the time when my mother told my father, `You love Danny very much, don't you? Well, let me tell you something, he is not your son.'"
He stated that Daniel was never invited to Christmas dinners and that he did not receive financial assistance from Charles. He also stated that on two occasions governmental entities contacted Charles in an attempt to establish responsibility for Daniel's support and that both agencies determined that the evidence did not warrant such an obligation.
With regard to the last allegation, the Guardian Ad Litem contacted the State Attorney's Office. The State Attorney's Office searched its records and notified the Guardian Ad Litem that no information was found on either Charles Contino, Barbara Contino, or Daniel Contino.
The Guardian Ad Litem also interviewed Greg Contino who stated that Barbara was unstable, that she had made verbal threats to commit suicide, and that she was eventually diagnosed as a manic depressive. Greg believes that Daniel should not share in the estate. He stated that all of the siblings know that their father would not have wanted Daniel to share in the estate, but that the two youngest brothers have agreed to give Daniel part of their share.
*1213 The Guardian Ad Litem evaluated the foregoing evidence and concluded that although the proof against Daniel casts a strong suspicion or grave doubt as to Daniel's paternity, the evidence must do more to overcome the presumption of legitimacy. She noted that once a child is born into wedlock, "one of the strongest rebuttable presumptions known to the law is required to be overcome before the child can be bastardized." Eldridge v. Eldridge, 153 Fla. 873, 16 So.2d 163 (1944). On this basis, the Guardian Ad Litem recommended that Daniel be considered a child of the decedent.
On June 30, 1997, the court conducted an evidentiary hearing where the court heard testimony that was substantially similar to that detailed in the Guardian Ad Litem's report. The only additional testimony received was from Mark Contino. When asked whether he had ever observed his father repudiate or disavow Daniel, he explained that when Daniel was living in foster homes, he asked his father to take Daniel in, but his father refused stating that Daniel was not his son and that he had no responsibility for him.
Despite this testimony, the court entered an order on the motion to determine heirs following the Guardian Ad Litem's recommendation and stating that Daniel Contino should be considered a child of the decedent and be entitled to take a share of the decedent's estate. Greg Contino, as Personal Representative of the Estate of Charles A. Contino, appeals.
Greg Contino contends that the trial court erred by determining that Daniel should be considered the decedent's child and entitled to take a share of the decedent's estate because the evidence adduced at the hearing overcame any presumption of legitimacy. We disagree.
In Eldridge, the Florida Supreme Court stated:
Where the legitimacy of a child born in wedlock is questioned by the husband and reputed father, one of the strongest rebuttable presumptions known to the law is required to be overcome before the child can be bastardized.... The rule is well established in this country that the husband may make the attack, but in so doing, he must overcome the strong presumption of legitimacy by clear and satisfactory testimony.... The better rule is that the husband is not required to prove his contention beyond all reasonable doubt, yet his proof must be sufficiently strong to clearly remove the presumption of legitimacy. The evidence must do more than cast a strong suspicion or grave doubt on the paternity of the child.
Eldridge, 16 So.2d at 163-64 (citations omitted). Later, in Blitch v. Blitch, 341 So.2d 251 (Fla. 1st DCA 1976), the First District explained that "[t]he purpose of the strong presumption in favor of legitimacy when a child is either born or conceived during wedlock is to protect the interest and the welfare of the child." Blitch, 341 So.2d at 252. Further, "[p]roof necessary to overcome the presumption must be more than an emotional outburst by the wife to the effect that the husband is not the father of the child. The rule is for the protection of the child, and it should not be lightly considered." Blitch, 341 So.2d at 252-53.
In the instant case, any doubt about Daniel's paternity stems directly from Barbara's emotional outburst wherein she told Charles that he was not Daniel's father. Although Barbara disavowed that Charles was Daniel's father throughout the divorce proceedings as is evidenced by the separation agreement and the divorce decree, Charles never did so. Even after the emotional outburst, when Charles filed the complaint for divorce, he alleged that five children were born of the marriage and listed Daniel. In fact, throughout his whole life, Charles never executed any document wherein he disavowed that Daniel was his son, and the documents that he did execute were carefully drafted to state that only Barbara disavowed that Daniel was his son. Even after the divorce, in the unexecuted will that Attorney Demos drafted, Charles referred to his six children including Daniel and he specifically referred to Daniel as "my son." This is further supported by the testimony of Attorney Demos who believed that Charles did not execute the will disinheriting Daniel because he did not want to disavow him.
*1214 Greg Contino and Daniel Contino's testimony that Barbara was unstable and mentally ill casts further doubt upon her disavowal of Charles as Daniel's father. The testimony given by Mark Contino that two governmental entities had contacted Charles in an attempt to establish responsibility for Daniel's support was refuted by the State Attorney's lack of records of any sort of investigation. With regard to the remaining testimony given by Mark and Greg Contino tending to cast doubt on Daniel's paternity, the trial court, having heard their testimony first-hand, was in the best position to evaluate their credibility. Accordingly, the trial court properly found that the evidence presented was insufficient to overcome the presumption of Daniel's paternity where he was born during Barbara and Charles Contino's marriage.
Next, Greg Contino contends that the probate court erred by denying his petition for authorization for DNA blood typing, pursuant to sections 742.10 and 742.12, Florida Statutes (1997). Again, we disagree.
Section 742.10, Florida Statutes (1997), entitled "Establishment of paternity for children born out of wedlock," states, in pertinent part, as follows:
This chapter provides the primary jurisdiction for the determination of paternity for children born out of wedlock. When the establishment of paternity has been raised and determined within an adjudicatory hearing brought under the statutes governing inheritance, or dependancy under workers' compensation or other similar compensation programs ..., it shall constitute the establishment of paternity for purposes of this chapter.
Section 742.12(1), Florida Statutes (1997), states, "In any proceeding to establish paternity, the court on its own motion may require the child, mother, and alleged fathers to submit to scientific tests ... to show a probability of paternity." By reading these statutes in conjunction, as we are obligated to do by the rules of statutory construction, we conclude that the legislature has made scientific testing to establish paternity available only where the child was born out of wedlock. Therefore, in the instant case, where Daniel Contino was born during the marriage of Barbara and Charles Contino, there is a presumption of paternity that has not been overcome and scientific testing is not available by statute to determine paternity.
Moreover, this conclusion is further bolstered by the Florida Supreme Court's opinion in the Department of Health & Rehabilitative Services v. Privette, 617 So.2d 305, 307 (Fla.1993). In Privette, the Court explained "[o]nce children are born legitimate, they have a right to maintain that status both factually and legally if doing so is in their best interests." Privette, 617 So.2d at 307. With the child's best interests in mind, the Court required that a trial court must conduct a hearing before ordering a blood test to establish paternity: "(a) to determine that the complaint is apparently accurate factually, is brought in good faith, and is likely to be supported by reliable evidence, and (b) to find that the child's best interests will be better served even if the blood test later proves the child's factual illegitimacy." Privette, 617 So.2d at 308 (footnote omitted). Further, "[t]he one seeking the test bears the burden of proving these elements by clear and convincing evidence." Privette, 617 So.2d at 308. The Court concluded that "in a real sense, the trial court ordering the blood test must decide one of the ultimate issues: whether the child's best interests will be served by being declared illegitimate and having parental rights transferred to the biological father." Privette, 617 So.2d at 309. In the instant case, Daniel's best interests cannot be served by being declared illegitimate, regardless of his age.
Affirmed.
JORGENSON and GODERICH, JJ., concur.
COPE, J., dissents.
COPE, Judge, dissenting.
The question presented in this case is whether appellee Daniel Contino is a lineal descendant of the decedent, Charles A. Contino, such that Daniel may share in the intestate estate. As the majority opinion indicates, under Florida law the presumption that Daniel is a lineal descendant (because he *1215 was born during the marriage) is a rebuttable one. See Eldridge v. Eldridge, 153 Fla. 873, 874-75, 16 So.2d 163, 164 (1944); see also Daniel v. Daniel, 681 So.2d 849, 851-52 (Fla. 2d DCA 1996), approved by 695 So.2d 1253 (Fla.1997).
If the presumption is truly rebuttable, then the case should be adjudicated on the basis of the most reliable evidence available, which is scientific DNA testing. Here, Daniel's mother had disclaimed the decedent's paternity in the parties' separation agreement which preceded their divorce. Based on that and other evidence, there was certainly a sufficient prima facie showing to justify an order for DNA testing.
The majority opinion relies on section 742.10, Florida Statutes (1997), but that statute does not support the trial court's refusal to order DNA testing. Section 742.10 applies in a determination of paternity for a child born out of wedlock. The statute has no application here, for here we deal with a birth during a marriage. Nothing prohibits the ordering of a DNA test for good cause shownand good cause exists here.
The majority opinion relies on Department of Health and Rehabilitative Services v. Privette, 617 So.2d 305 (Fla.1993), but that decision likewise is inapplicable. In Privette, the Department of Health and Rehabilitative Services filed a paternity action against the alleged natural father of a minor child even though the child had been born during the mother's marriage to someone else. The purpose of the action was to obtain child support for the minor child. Because such a paternity determination potentially can be disruptive to the child's existing relationships, the court held that before ordering a blood test, there must be a preliminary determination that the child's best interests will be served by pursuing the paternity action. See id. at 308-09; M.R. v. A.B.C., 683 So.2d 629, 631-32 (Fla. 3d DCA 1996). The Privette rule exists in order to protect the welfare of minor children.
In the case now before us, by contrast, Daniel Contino is an adult, approximately thirty-two years old. The protection of the interests of a minor child is not involved here, and the Privette analysis has no application.
Given that the proceeding in the trial court was one to determine whether Daniel is, or is not, a lineal descendant of Charles A. Contino, DNA testing was called for so that the case could be authoritatively resolved by the use of the most reliable evidence.
NOTES
[1] Greg Contino was born of Charles A. Contino's first marriage.