466 So.2d 1179 (1985)
R. Don HESS, Appellant,
v.
Joanna B. HESS, Appellee.
No. 85-52.
District Court of Appeal of Florida, Third District.
April 2, 1985.
Rehearing Denied April 22, 1985.
R. Don Hess, in pro. per.
Shalle Stephen Fine, Coral Gables, for appellee.
Brenda M. Abrams, Miami, for the minor children, as Guardian Ad Litem.
Before BARKDULL, BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
On February 12, 1980, Joanna B. Hess filed a sworn petition to dissolve the marriage between her and her husband, Ralph Donald Hess. Among other things, the petition alleged that there were two children born of the marriage and requested that Mr. Hess be ordered to pay reasonable child support and that Mrs. Hess be awarded custody of the children. By July of that year, the parties resolved to settle their differences through a property settlement agreement, which recited that Mrs. Hess was to have custody of the two children "born of this marriage"; required Mr. Hess to pay a specified amount of child support; and gave Mr. Hess reasonable rights of visitation. The Final Judgment of Dissolution of Marriage entered on August 11, 1980, found that "there are two (2) children as a result of the marriage between the petitioner and respondent," awarded custody of the children to Mrs. Hess with reasonable rights of visitation in Mr. Hess, and ratified, approved and incorporated the property settlement agreement, including its child support provision.
The record reflects that the post-judgment years were stormy  Mr. Hess was frequently behind in payments of child support, which resulted in the periodic filing of motions for contempt, motions to modify child support, and motions to enforce visitation rights. Throughout it all, Mr. Hess, although not an attorney, represented himself. In September 1984, at a hearing on assorted cross-motions, an unwary Mr. Hess revealed that he had recently learned *1180 that he was not the father of the two children.[1]
It has been said that "[i]f you see a man approaching you with the obvious intent of doing you good, you should run for your life."[2] Mr. Hess neither ran for his life nor adequately responded when Mrs. Hess' lawyer, upon hearing Mr. Hess' statement, graciously announced:
"If your Honor please, at this time on the issue of whether Mr. Hess is the father of the children, the issue having been raised, I am authorized by Mrs. Hess to say that we concede on the issue, and that being the case Mr. Hess will have no obligation for child support. As I understand it, the law does provide for this type of proceeding. Mr. Hess will have no further obligation for child support and will have no further legal relationship to these children, and I would ask the Court for an order to that effect cancelling the judgment previously entered of record, satisfying it of record. "Before proceeding any further, there doesn't seem to be much more to talk about."
Contrary to the assertion of the wife's attorney, the issue of whether Mr. Hess was the father of the children had not been raised. Mr. Hess had made no effort, formal or informal, to defend his failure to pay child support on the ground that he was not the father of the children and had made no effort, formal or informal, to collaterally attack the declaration in the final judgment of dissolution that the children were born of the marriage. He persisted in his position that, whether or not he was the natural father, he most assuredly was the spiritual and legal father of the children  indeed, the only father they had ever known. Nonetheless, the trial court relieved Mr. Hess of all further support responsibility towards the children, vacated previous arrears and contempt orders, struck the findings of the final judgment of dissolution relating to the children having been born of the marriage, and decreed that Mr. Hess has no legal relation to the children and thus no entitlement to visitation with them. Mr. Hess appeals, and we reverse.
It is quite clear that had Mrs. Hess in post-judgment proceedings attempted to deprive Mr. Hess of his established legal relationship of father to the children, her effort would have been barred by familiar principles of res judicata. See Nostrand v. Olivieri, 427 So.2d 374 (Fla. 2d DCA 1983); Herout v. Lawrence, 423 So.2d 558 (Fla. 1st DCA 1983). See also Freed v. Freed, 373 So.2d 436 (Fla. 3d DCA 1979). Cf. Decker v. Hunter, 460 So.2d 1014 (Fla. 3d DCA 1984) (husband barred by res judicata from collaterally attacking divorce judgment declaring him to be father); Johnson v. Johnson, 395 So.2d 640 (Fla. 2d DCA 1981) (same). Obviously, Mrs. Hess can fare no better merely because her attack on the judgment is camouflaged in sheep's clothing. Despite Mrs. Hess' argument in this court that Mr. Hess asked to be relieved of the final judgment declaring the children to be born of the marriage, we find nothing in the record whatever to support such an argument. Mr. Hess' position throughout was that he wanted to have relief from his obligation to support the children because he was financially unable to, not because the children were not his. His thus irrelevant mention of his post-dissolution discovery could not be seized upon, as it obviously was, to forever deprive him of all further contact with his children.
Accordingly, the Order and Supplemental Decree under review is
Reversed.
NOTES
[1] Because Mr. Hess had had a vasectomy before this marriage, he knew that he was not the biological father of the children. He believed, however, that the children were the products of Mrs. Hess being artificially inseminated, not the products of two separate adulterous relationships.
[2] The saying has been attributed to Henry David Thoreau by William H. Whyte, Jr. in The Organization Man (1956).