ALTENBERND, Acting Chief Judge.
S.D. appeals an order denying his motion to intervene in the dissolution proceeding between A.G., the wife, and J.G., her husband. S.D. sought to establish that he was the biological father of a 2/6-year-old, quasi-marital child born during the marriage of A.G. and J.G.[1] We affirm.
This case is yet another example of the legal conundrums surrounding quasi-marital children in the era of easy access to DNA testing. The husband and wife were married on May 5, 1995. The child, K.G., was born in late January 1996. Thus, in all probability the child was conceived in the month preceding this marriage. The birth certificate is not in our record, but as a matter of law, the husband’s name must appear on that document as the legal father. See § 382.013(6)(a), Fla. Stat. (1995).
The couple had a short and rocky marriage. There apparently were instances of domestic violence. They separated on April 20, 1996, but the husband continued to have regular contact with K.G.[2]
The wife filed a pro se dissolution proceeding in February 1997, alleging that K.G. was the husband’s child. The husband’s pro se answer initially disputed paternity. At a case management conference in August 1997, the trial court ruled that it would not order a DNA test unless a party filed a motion and scheduled a hearing to determine the propriety of such testing. No such motion was ever filed.
On August 7, 1998, when K.G. was more than 2/6 years old, S.D. filed a petition to intervene in the divorce proceeding. He attached results from DNA testing of the mother, the child, and himself, which he had acquired without a court order. The record contains no test results for the legal father, J.G. The test results conclude that there is a- high probability that S.D. is the biological father of this child.[3]
Several days after S.D. filed this motion to intervene, the husband and wife filed a fully executed and witnessed separation and property settlement agreement. That agreement gives the husband shared parental responsibility for the child, requires that he pay child support, and generally treats the child like any other marital child in the context of a divorce.
*809 Thereafter, the trial judge entered an order denying intervention, and S.D. appealed.[4] We do not know whether the trial court has entered a final judgment of dissolution during the pendency of this appeal.
The author of this opinion has previously suggested that the long reign of the presumption of legitimacy insulated common law courts from the need to create rules providing suitable answers to the numerous questions surrounding quasi-marital children. See Chris W. Altenbernd, Quasi-Marital Children: The Common Law’s Failure in Privette and Daniel Calls for Statutory Reform, 26 Fla. St. U.L.Rev. 219 (1999). Cases concerning quasi-marital children present major public policy issues that are difficult, if not impossible, to address within the case law method. In the absence of additional statutory guidance from the legislature, we conclude that it is very important for the courts to provide narrow holdings that do not attempt to announce public policy rules broader than those required by the facts in a particular case. At the same time, we must attempt to keep this growing body of case law consistent and coherent, avoiding result-oriented decisions, while recognizing our limited ability to foresee or predict the appropriate outcomes for future cases.
This court has already held that a putative father has no right to initiate a paternity action concerning the child of an intact marriage if both the married woman and her husband object. See LA v. H.H., 710 So.2d 162 (Fla. 2d DCA 1998). We extended this holding in S.B. v. D.H., 736 So.2d 766 (Fla. 2d DCA 1999), to prevent the trial court from evaluating the “intaetness” of a marriage so long as no divorce proceeding was pending.
In this case, we take the next step and hold that the putative father is not entitled to intervene in a divorce proceeding to seek a determination of paternity concerning a quasi-marital child where (1) the husband and wife have stipulated or agreed that the child should be treated like any other marital child; (2) the putative father waited more than 2)6 years from the birth of the child to initiate any proceeding and has not alleged any fraud or concealment of any critical fact by the husband and wife; [5] (3) the putative father has not alleged that he established a parental-style bond with the child, and (4) the putative father has not alleged a basis to terminate the legal father’s rights under chapter 39, Florida Statutes. Although we are not inclined to- believe that S.D. will have any greater rights under chapter 742, Florida Statutes, this opinion does not rule out such a proceeding.[6] We are fully aware that our holding leaves open the possibility that a future litigant will seek to intervene under circumstances where several, but not all four, of the factors specified in our holding exist. Under the case law method, however, we will consider an expansion of our holding only when those facts are presented.
We do not believe that our holding conflicts with any of this court’s earlier holdings. In Alchin v. Alchin, 667 So.2d 477 (Fla. 2d DCA 1996), for example, we required the trial court to permit a putative father to intervene in a divorce, but in a circumstance in which the mother supported that request. To the extent that J.G. will now be estopped to deny his parentage by virtue of his stipulation and *810 the judgment of divorce, this case is consistent with S.B., 736 So.2d 766; see also C.C.A. v. J.M.A., 744 So.2d 516 (Fla. 2d DCA 1999) (legal father is equitably es-topped from denying paternity of child after more than two years).
The policies supported by the presumption of legitimacy or any separate presumption of paternity involve more than the inscription of a male name on a child’s birth certificate. The presumption of legitimacy has long advocated the primacy of the family as the best unit within all of our social structures and governmental institutions to raise and protect children. Although divorce may separate and strain a family with children, divorce does not end the important child-rearing functions of the family. If there is any broader public policy announced within our opinions, we are probably suggesting that the traditional role of the family unit should not be interfered with by government or second-guessed by judges absent some extraordinary circumstances, particularly when the legal parents object and show a serious interest in fulfilling their child-rearing functions.
Affirmed.
FULMER and NORTHCUTT, JJ., Concur.

. A quasi-marital child is a child bom to a married woman whose husband is not the child’s biological father.

. Because this is an appeal from an order denying intervention, our record is limited. There are no depositions to flesh out the facts in this case. The husband and wife are both pro se litigants and have not filed any pleadings or briefs with this court.

. S.D. also attached to his petition to intervene an "acknowledgment of paternity,” which states that it is executed pursuant to section 63.062, Florida Statutes (1997). That statute describes the people who are required to give consent for an adoption. This case clearly does not involve an adoption. The only other recognized use for an acknowledgment of paternity is to establish paternity for a nonmarital child. See § 742.10, Fla. Stat. (1997). The child in this case was not born out of wedlock. Thus, we conclude that the acknowledgment should not alter our analysis in this case. See also § 382.013(2)(c), Fla. Stat. (1997) (prohibiting father’s name on birth certificate of child born out of wedlock unless both mother and father sign consenting affidavit).

. The trial judge, R. Thomas Corbin, obviously gave considerable thought and effort to this order in the context of a divorce in which the parties were pro se. We note that he has also published an interesting article discussing issues that arise in such cases. R. Thomas Corbin & Rana Holz, Distinguishing Legitimacy from Paternity, 73 Fla. B.J. 57 (Jan.1999).

. The statute proposed by the author of this opinion would give putative fathers such as S.D. the right to seek paternity determinations, but only within the first two years. See Chris W. Altenbernd, Quasi-Marital Children: The Common Law’s Failure in Privette and Daniel Calls for Statutory Reform, 26 Fla. St. U.L.Rev. 219, 272 (1999).

.Indeed, it appears from the record that S.D. may have filed a separate paternity action in another circuit court having jurisdiction over the matter.