871 So.2d 1055 (2004)
DEPARTMENT OF REVENUE, o/b/o Amelia PRESTON, Appellant,
v.
James (Willie) CUMMINGS, Appellee.
Department of Revenue, o/b/o Tina L. Cummings, Appellant,
v.
Henry J. Stafford, II, Appellee.
Department of Revenue, o/b/o Sallie M. Clark, Appellant,
v.
Larry J. Peruzzi, Appellee.
Department of Revenue, o/b/o Sandra Stephens, Appellant,
v.
Vennis Norris Ellis, Appellee.
Department of Revenue, o/b/o Susan Marie Thompson, Appellant,
v.
William O. Stanton, III, Appellee.
Department of Revenue, o/b/o Kelly Inglis, Appellant,
v.
Christopher E. Hotalen, Appellee.
Nos. 2D02-5333, 2D02-5318, 2D02-5279, 2D02-5277, 2D02-5264, 2D02-5261.
District Court of Appeal of Florida, Second District.
May 12, 2004.
*1056 Charles J. Crist, Jr., Attorney General, Tallahassee, and William H. Branch, Assistant Attorney General, Tallahassee, for Appellants.
No appearance for Appellees James (Willie) Cummings, Henry J. Stafford, II, Larry J. Peruzzi, Vennis Norris Ellis, William O. Stanton, III, Christopher E. Hotalen.
ALTENBERND, Chief Judge.
In these six consolidated cases, the Department of Revenue, on behalf of six mothers, filed complaints against six putative biological fathers seeking to determine paternity and to establish child support for various children. In each case, the mother was married to a man other than the alleged biological father at the time of the child's birth. The circuit court dismissed each complaint for failure to join the legal father, i.e., the mother's husband at the time of a child's birth,[1] as an indispensable party. We affirm the orders dismissing these cases. The factual allegations in these complaints do not establish a legal *1057 basis for the Department's decision to ignore the presumption of each child's legitimacy by pursuing support from a putative biological father without joining the legal father. Indeed, it appears likely that the Department should initiate child support proceedings against the legal fathers instead of the putative fathers in all of these cases. Our decision requires us to certify conflict with the First District's decision in State, Department of Revenue v. Pate, 824 So.2d 1038 (Fla. 1st DCA 2002) (holding legal father listed on child's birth certificate was not indispensable party to paternity action brought by Department to establish child support).
In each of these cases, the Department filed a standard form complaint entitled, "Complaint to Establish Paternity, Child Support and Other Relief Without Affecting Legal Rights of Husband of Mother at Time of Birth." The Department named only the alleged biological fathers in the complaints. Paragraph 5 of each complaint stated, "The mother of the minor child(ren) was married to a man other than the Respondent at the time the child(ren) was conceived or born, but Petitioners do not seek to affect any legal rights relating to this child(ren) said individual may possess."
The boilerplate language in each complaint did not disclose the individual circumstances of each case. However, most of the complaints attached another form, a document referred to in the complaint as an affidavit, but actually entitled "Complaint to Establish Paternity, Child Support and Other Relief." On this form, each mother filled in the blanks and signed the form, which was notarized under oath. Each of these forms provided varying amounts of information. In some cases, the child or children bear the surname of their legal father, while in others they bear the surname of their biological father. There was little or no information in these forms regarding the legal fathers, the status of their marriage to the mothers, or their relationships with the children. The Department did not attach any marriage certificates or judgments dissolving marriages to the complaints. Similarly, there were no birth certificates attached to the complaints that might disclose how each child's parentage is listed on that document.
The Department served the putative biological fathers with these complaints. Three did not answer the complaint and have not appeared in these proceedings to date. One filed a pro se answer but failed to appear at the hearing held before the circuit court regarding the dismissal. One appeared at the hearing but failed to file a written response to the complaint. The sixth putative biological father had a grandfather who appeared at the hearing and attempted to answer the complaint, indicating that his grandson was incarcerated, indigent, and suffering from problems with alcohol. None of the alleged biological fathers have appeared in this proceeding.
Although the Department did not name the legal fathers of the children as defendants to the complaints, the Department sought to issue to each legal father a "notice of action to legal father." This notice provided:
YOU ARE HEREBY NOTIFIED that the above-styled action has been filed to determine the paternity of the child(ren) born on the dates indicated in the Complaint to determine paternity and Exhibits attached thereto, a copy of which is attached hereto. In filing this action, Petitioners seek to have the named Respondent ordered to pay child support for the child(ren) who are the subject of this action. YOU ARE NOT THE NAMED RESPONDENT. If you *1058 were legally married to the mother named in the Complaint at the time the child(ren) [sic] was either conceived or born, you may have legal rights or responsibilities you wish to assert.
Although in filing this action the Petitioners do not seek to affect any rights you may possess, YOU SHOULD CONSULT WITH AN ATTORNEY OF YOUR OWN CHOOSING WITH REGARD TO YOUR RIGHTS AND POTENTIAL RESPONSIBILITIES. Your failure to file a pleading and/or attend a hearing in this cause will be interpreted as your having no objection to the Respondent being adjudicated to be the biological father of the named child(ren).
In five of the cases, the Department attempted to personally serve the legal fathers, but all of the notices were returned unserved. The Department asserts it also mailed the notices by regular United States mail to each legal father. No legal father has appeared in these proceedings to date.
Each case was filed in a circuit court division over which Judge Logan presided. Judge Logan reviewed these complaints and became understandably concerned about the Department's procedure and the interests of the legal fathers and the children who might be affected by these proceedings. Judge Logan set a status conference to address whether the legal fathers were indispensable parties to these actions in light of Department of Health & Rehabilitative Services v. Privette, 617 So.2d 305 (Fla.1993), and R.H.B. v. J.B.W., 826 So.2d 346 (Fla. 2d DCA 2002). After this hearing, Judge Logan dismissed these complaints for failure to join the legal fathers as indispensable parties.
Because neither the putative biological fathers nor the legal fathers for these children have appeared in this appeal, this court is proceeding solely upon a brief filed by the Department. Further, this court has no way of determining whether the legal fathers, or indeed some of the putative biological fathers, are receiving copies of this court's proceedings, because they are being mailed to addresses provided by the Department.
The Department argues that the legal fathers of these childrenthe men to whom the mothers were married at the time of each child's birthare not indispensable parties to this action. See Pate, 824 So.2d 1038. The Department asserts that it can pursue a paternity action against the biological fathers and enter a judgment determining paternity without affecting the legal fathers' rights. As such, the Department argues that it need only provide some form of informal notice to the legal fathers of the proceedings or any hearings in these cases. We disagree. As these complaints are pleaded, the circuit court cannot determine who has a duty to support these children without the joinder of the legal fathers.
Indispensable parties are "necessary parties so essential to a suit that no final decision can be rendered without their joinder." Hertz Corp. v. Piccolo, 453 So.2d 12, at 14 n. 3 (Fla.1984). An indispensable party has also been described as "one whose interest will be substantially and directly affected by the outcome of the case" and "one whose interest in the subject matter is such that if he is not joined a complete and efficient determination of the equities and rights between the other parties is not possible." Amerada Hess Corp. v. Morgan, 426 So.2d 1122, 1125 (Fla. 1st DCA 1983); Allman v. Wolfe, 592 So.2d 1261, 1263 (Fla. 2d DCA 1992).
These paternity cases seek to determine the man who has a legal duty to support *1059 the children involved. See § 409.2564(1), Fla. Stat. (2002) (requiring Department of Revenue to institute "action as is necessary to secure the obligor's payment of current support" when regular support payments are not being made to obligee receiving public assistance); D.F. v. Dep't of Revenue, 736 So.2d 782, 785 n. 3 (Fla. 2d DCA 1999), aff'd, 823 So.2d 97 (Fla.2002) (noting paternity action is filed to establish legal father who will be legally responsible to support child). Thus the indispensable parties to these actions are those persons who may have a legal duty to support the children involved. Further, if the duty to support cannot be completely divorced from other parental rights, those persons whose parental rights to the children may be affected by the proceedings would also be indispensable parties.
When a child is born during a marriage, the legal duty to support that child presumptively rests with the parties to the marriage. This is because a child born during a marriage is presumed to be the legitimate and legal child of the husband and wife. See Achumba v. Neustein, 793 So.2d 1013, 1014 (Fla. 5th DCA 2001); G.T. v. Adoption of A.E.T., 725 So.2d 404, 410 (Fla. 4th DCA 1999). This presumption has been described as "one of the strongest rebuttable presumptions known to law." G.T., 725 So.2d at 410; Eldridge v. Eldridge, 153 Fla. 873, 16 So.2d 163, 163 (1944). It was created to protect the welfare of the child, Privette, 617 So.2d at 307, and particularly the child's interests in legitimacy, stability, and support. See R.H.B., 826 So.2d at 350; Ownby v. Ownby, 639 So.2d 135, 138 n. 3 (Fla. 5th DCA 1994). Indeed, in Privette the supreme court held that a child has a due process constitutional right to retain his or her legitimacy if doing so is in the best interest of the child and that the husband-legal father has a constitutional right to maintain the relationship with his child unimpugned. 617 So.2d at 307.
The presumption of legitimacy is codified in section 382.013(2)(a), Florida Statutes (2002). Subsection (2) of this statute is entitled "Paternity" and provides in part (a): "If the mother is married at the time of birth, the name of the husband shall be entered on the birth certificate as the father of the child, unless paternity has been determined otherwise by a court of competent jurisdiction." Subsections (2)(b) to (e) then explain when and how paternity should appear on the birth certificate if the mother is not married at the time of the child's birth. Under this statutory scheme, the birth certificate serves as a legal document indicating an initial determination of paternity for all children born during a marriage. Thus chapter 742, Florida Statutes (2002), entitled "Determination of Parentage," specifically provides, "This chapter provides the primary jurisdiction and procedures for the determination of paternity for children born out of wedlock." § 742.10, Fla. Stat. (2002). Section 742.011 permits a paternity action only "when paternity has not been established by law or otherwise."[2]
Moreover, so long as a couple remains married, the husband and legal father stands in loco parentis to the child and owes a duty of support to the child. *1060 R.H.B., 826 So.2d at 347 (citing Albert v. Albert, 415 So.2d 818, 820 (Fla. 2d DCA 1982); Taylor v. Taylor, 279 So.2d 364 (Fla. 4th DCA 1973)); see also G.T., 725 So.2d at 411 (stating, "[a] husband is presumed to be the father of a child born during the marriage and must provide for support of the child unless and until the husband meets his burden of disproving paternity").
Finally, if these paternity actions were allowed to proceed and the Department established that a putative biological father of a child was in fact the biological father of a child, the Department intends for the trial court to enter a judgment of paternity. Despite the title of the Department's complaint, this cannot be accomplished without affecting the legal rights of both the legal father and the child. Section 382.013(2)(d), Florida Statutes (2002), mandates that the name of the man who is determined to be the biological father in a paternity action be placed upon the birth certificate. Upon receipt of such a judgment, the Department of Health is required to prepare and file a new birth certificate reflecting the name of the biological father as the legal father. See § 382.015(2), Fla. Stat. (2002). Certainly the legal recognition of the biological father will also affect the heretofore legal father's rights to the care, custody, and control of the child. See Achumba, 793 So.2d at 1015; G.F.C. v. S.G., 686 So.2d 1382, 1386 (Fla. 5th DCA 1997) (rejecting concept of "dual fathership"); see also Privette, 617 So.2d at 309 n. 7 (describing action to establish paternity of biological father to child born during marriage to another man as "species of termination proceeding" that has "the effect of vesting parental rights in putative natural father and removing parental rights from the legal father"); but see Daniel v. Daniel, 695 So.2d 1253, 1255 (Fla.1997) (distinguishing between paternity and legitimacy and stating that "legitimacy will not be affected by a determination of paternity or any orders of support that may follow such a determination").
Piecing together these various legal principles, the law suggests that not only is the legal father an indispensable party, he is the person the Department must usually first pursue in determining who has a duty to support the child. If the presumption of legitimacy or legal fatherhood has any meaning, it must require that the State and the courts, strangers to the marital and familial relationships in these cases, look first to the legal father in trying to establish court-ordered child support. If the legal father remains in loco parentis, he may be required to fulfill the duty to support the child, R.H.B., 826 So.2d at 347, and the Department may have no basis to look elsewhere for the child's support.
Further, although the presumption of legitimacy is rebuttable, there are many circumstances in which a person cannot seek to rebut the presumption. See, e.g., Privette, 617 So.2d at 308 n. 3. These include circumstances where res judicata applies because a prior judgment determined the child's parentage, see D.F. v. Dep't of Revenue, 823 So.2d 97, 100 (Fla. 2002); where a parent is equitably estopped from denying parentage, see C.C.A. v. J.M.A., 744 So.2d 515 (Fla. 2d DCA 1999); or where a person not otherwise responsible for the support of the child contracts to support the child, see L.S.H. v. P.L.H., 739 So.2d 1264 (Fla. 2d DCA 1999). If these circumstances exist, the child's legitimacy may not be subject to question, particularly by the State. See Privette, 617 So.2d at 309 (stating that Department's suit for paternity was about impugning legitimacy of child and parental rights of child's present legal father for *1061 sake of money allegedly owed to State of Florida; acknowledging State may have compelling interest in determining paternity but must pursue least restrictive means).
Admittedly, there are times when a legal father may have no duty to support a child of the marriage that is not his biological child. See Daniel, 695 So.2d 1253; Albert v. Albert, 415 So.2d 818 (Fla. 2d DCA 1982); Gantt v. Gantt, 716 So.2d 846 (Fla. 4th DCA 1998); Lynn v. Lynn, 358 So.2d 908 (Fla. 1st DCA 1978). In such a case, when confronted with a complaint filed by the State seeking child support, the legal father may seek to disavow his parental rights and responsibilities in favor of a biological father. But see Gantt, 716 So.2d at 847 (stating that if blood test of legal father is "negative," court "should determine if the circumstances justify a deviation from the `established rule of law'" that legal father has no duty to support child that is not his own, adopted, or for whom he has not contracted to support; citing Daniel, 695 So.2d at 1254).
The legal father also has the right to seek to retain his relationship with the child and to fulfill the rights and responsibilities of parenthood. If the mother is in agreement with the husband's assertion of his legal rights to the child, there may be no basis for adjudicating paternity in a person other than the legal father. See S.D. v. A.G., 764 So.2d 807 (Fla. 2d DCA 2000) (prohibiting putative biological father from intervening in divorce to establish paternity when legal mother and father objected); S.B. v. D.H., 736 So.2d 766 (Fla. 2d DCA 1999) (prohibiting putative biological father from pursuing action for paternity for child born to intact marriage once both mother and legal father object); see also G.F.C., 686 So.2d 1382. Even if the mother disagrees and supports questioning the child's parentage, the court is still required to perform an analysis of the child's best interests before ordering a blood test or determining parentage or legitimacy. See Privette, 617 So.2d at 308-09; Alchin v. Alchin, 667 So.2d 477 (Fla. 2d DCA 1996); Hebner v. Barry, 834 So.2d 305 (Fla. 4th DCA 2003).
We fail to see how these seemingly endless possibilities can be fully explored in these paternity suits without the joinder of the legal fathers. These complaints do not reveal any facts that would conclusively establish that the legal fathers do not owe a duty of support. See, e.g., Robinson v. State, Dep't of Revenue, 661 So.2d 363 (Fla. 1st DCA 1995) (holding Privette does not shield putative biological father from paternity action when mother and legal father were previously divorced and their final judgment acknowledged husband was not legal father and owed no duty of support). Absent such specific allegations, the legal fathers are indispensable parties whose presence is required to conclusively determine who owes a duty to support to these children.
As we have stated before, cases concerning quasi-marital children present major public policy issues that are difficult, if not impossible, to address within the case law method. See S.D., 764 So.2d at 809.[3] In the absence of additional statutory guidance from the legislature, we must provide narrow holdings that do not attempt to announce public policy rules broader than those required by the facts in a particular case. Id. In this case, we hold only that a legal father of a child is an indispensable party in any action to determine paternity and to place support obligations *1062 on another man unless the pleading conclusively establishes that the legal father's rights to the child have been divested by some earlier judgment. We therefore affirm the dismissal of these cases as pleaded for failing to join the legal father.
Our conclusion requires us to conflict with Pate, 824 So.2d 1038. In Pate, the First District held that a legal father is not an indispensable party in a paternity action brought by the Department to establish paternity and child support of a child born during the mother's marriage to another man. Pate's conclusion rested primarily on two footnotes in Privette, 617 So.2d 305. In footnote 4, the supreme court indicated that a legal father "must be given notice of the hearing" and an opportunity to be heard. Id. at 308 n. 4. In contrast, in footnote 5 the supreme court declared that the child, as represented by a guardian ad litem, "is an indispensable party." Id. at 308 n. 5. Thus Pate concluded the supreme court did not intend to make the legal father an indispensable party or it would have stated as much explicitly.
Although the supreme court's language in Privette is open to some interpretation, Privette involved a petition for certiorari seeking to quash an order requiring a blood test. The case therefore had a narrow scope and standard of review, and the court was not called upon to determine whether a legal father was indispensable to the action. Unlike the First District, we conclude that when the Department seeks to establish the paternity of a child born during the mother's marriage to another man, the notice and opportunity to be heard that must be provided to a legal father pursuant to Privette will generally require the joinder of the legal father as an indispensable party, unless the factual allegations in the complaint conclusively establish the legal father's rights have already been divested by an earlier judgment. We therefore certify conflict with Pate.
Affirmed.
COVINGTON and CANADY, JJ., Concur.
NOTES
[1] See, e.g., § 382.013(2)(a), Fla. Stat. (2002); Dep't of Health & Rehabilitative Servs. v. Privette, 617 So.2d 305 (Fla.1993).
[2] Because a quasi-marital child has an established legal father on the face of his or her birth certificate pursuant to policies established by the legislature, and because that man and the child must lose this legal relationship upon the entry of a paternity judgment pursuant to section 382.015(2), this court has questioned whether a paternity action under chapter 742 is the appropriate lawsuit to resolve these issues. See R.H.B., 826 So.2d 346. As discussed in R.H.B., we suspect that the supreme court may have inadvertently permitted such an action in Gammon v. Cobb, 335 So.2d 261 (Fla.1976).
[3] See also Chris W. Altenbernd, Quasi Marital Children: The Common Law's Failure in Privette and Daniel Calls for Statutory Reform, 26 Fla. St. U.L.Rev. 219 (1999).