930 So.2d 604 (2006)
FLORIDA DEPARTMENT OF REVENUE, et al., Petitioners,
v.
James (Willie) CUMMINGS, et al., Respondents.
No. SC04-1045.
Supreme Court of Florida.
May 11, 2006.
*605 Charles J. Crist, Jr., Attorney General, and William H. Branch, Assistant Attorney General, Tallahassee, FL, for Petitioner.
Louis K. Rosenbloum, P.A., Pensacola, FL, for Respondent.
BELL, J.
We have for review Department of Revenue ex rel. Preston v. Cummings, 871 So.2d 1055 (Fla. 2d DCA 2004), which expressly and directly conflicts with State Department of Revenue ex rel. Baggs v. Pate, 824 So.2d 1038 (Fla. 1st DCA 2002). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. The issue before us is whether a legal father (i.e., a man married to the child's mother at the time of birth) is an indispensable party in a paternity action brought by the State of Florida Department of Revenue under chapter 409, Florida Statutes (2000), to establish that a man other than the legal father is the child's biological father and, as such, is obligated to provide child support.[1] In Cummings, the Second District held that the legal father is an indispensable party to such actions unless the pleading conclusively establishes that the legal father's rights to the child have been divested by some earlier judgment. See 871 So.2d at 1061-62. For the reasons explained below, we agree with the Second District.

I. Facts

This case arose from six consolidated actions to determine paternity and establish child support.[2] In each case, the State of Florida Department of Revenue ("Department") filed a standardized complaint entitled "Complaint to Establish Paternity, Child Support and Other Relief Without Affecting Legal Rights of Husband of Mother at Time of Birth." Each complaint was filed on behalf of a mother against the man she alleged to be her child(ren)'s biological father (i.e., the "putative father"). Although the complaints acknowledge that the mother was married to a man other than the putative father at the time the child was born, only the putative father is named as a respondent. The body of the complaint states that "this is an action to establish paternity, child support, and other relief for minor child(ren)." Among its prayers for relief, the Department requests a court order "Determin[ing] the Respondent/ Biological Father to be the father of the child(ren) who owes a duty of *606 support" and requiring him to pay child support and health care expenses.
The Department served this standardized complaint on each putative father and attempted to provide a Notice of Action to each legal father. The Notice of Action stated:
YOU ARE HEREBY NOTIFIED that the above-styled action has been filed to determine the paternity of the child(ren) born on the dates indicated in the Complaint to determine paternity and Exhibits attached thereto, a copy of which is attached hereto. In filing this action, Petitioners seek to have the named Respondent ordered to pay child support for the child(ren) who are the subject of this action. YOU ARE NOT THE NAMED RESPONDENT. If you were legally married to the mother named in the Complaint at the time the child(ren) was either conceived or born, you may have legal rights or responsibilities you wish to assert.
Although in filing this action, the Petitioners do not seek to affect any rights you may possess, YOU SHOULD CONSULT WITH AN ATTORNEY OF YOUR OWN CHOOSING WITH REGARD TO YOUR RIGHTS AND POTENTIAL RESPONSIBILITIES. Your failure to file a pleading and/or attend a hearing in this cause will be interpreted as you having no objection to the Respondent being adjudicated to be the biological father of the named child(ren).
The Department mailed this notice to each of the six legal fathers at his last known address. In addition, it attempted to personally serve this notice on five of the legal fathers and to constructively serve the remaining legal father through publication in the Tampa Bay Review. Ultimately, these attempts at service failed, and none of the legal fathers appeared at any of the proceedings.
The Circuit Court in Pinellas County dismissed all six complaints for failure to name the legal father as an indispensable party. On appeal, the Second District affirmed. Cummings, 871 So.2d at 1056. It first determined that the complaints "do not establish a legal basis for . . .ignor[ing] the presumption of each child's legitimacy by pursuing support from a putative biological father without joining the legal father"; and second, that "it appears likely" that these proceedings should have been initiated against the legal fathers instead of the putative fathers. Id. at 1056-57. The Second District also recognized that while the law allows a legal father to "disavow his parental rights and responsibilities in favor of the biological father," it also allows him to assert them and to "fulfill the rights and responsibilities of parenthood." Id. at 1061. Finally, the court noted that it is impossible to know if the legal father will choose to assert these rights if he is not named as a party. Id. Based on these findings, the Second District held that "a legal father . . . is an indispensable party in any action to determine paternity and to place support obligations on another man unless the pleading conclusively establishes that the legal father's rights to the child have been divested by some earlier judgment." Id. at 1061-62.
The Second District acknowledged that its holding conflicted with Pate, 824 So.2d at 1039, in which the First District held that a legal father was not an indispensable party in a similar action. 824 So.2d at 1039. The First District based its holding on the fact that this Court did not expressly require legal fathers to be named as indispensable parties in Department of Health & Rehabilitative Services v. Privette, 617 So.2d 305 (Fla.1993). In Privette, *607 617 So.2d at 307-08 & n. 4, this Court recognized that a legal father's "unmistakable interest" in paternity actions to establish a putative father's obligation to provide child support entitled him to notice of the action. The Court did not, however, address the procedures necessary to protect this interest, particularly when the legal father's whereabouts are unknown. This is the issue we address today.

II. Analysis

Because this appeal arises from the trial court's decision to dismiss a complaint based on a question of law, we review it de novo. Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So.2d 582, 584 (Fla. 2000).
As the Second District recognized, the presumption of legitimacy requires a holding that the legal father is an indispensable party in an action to determine paternity and to place support obligations on another man unless it is conclusively established that the legal father's rights to the child have been divested by some earlier judgment. To explain this holding, we begin by defining the term "indispensable party." We then explain why the presumption of legitimacy requires that a legal father be named an indispensable party in these actions. Finally, we conclude by recognizing that these types of cases have long presented Florida courts with significant dilemmas that will persist as long as the relevant statutory provisions remain unchanged.

A. Indispensable Party
An indispensable party is one whose interest in the controversy makes it impossible to completely adjudicate the matter without affecting either that party's interest or the interests of another party in the action. Hertz Corp. v. Piccolo, 453 So.2d 12, 14 n. 3 (Fla.1984) (describing indispensable parties as ones so essential to a suit that no final decision can be rendered without their joinder); Bastida v. Batchelor, 418 So.2d 297, 299 (Fla. 3d DCA 1982) ("An indispensable party [is] one without whom the rights of others cannot be determined."). As we stated in Oakland Properties Corp. v. Hogan, 96 Fla. 40, 117 So. 846, 848 (1928) (quoting Indian River Mfg. Co. v. Wooten, 48 Fla. 271, 37 So. 731, 731 (1904) (syllabus)):
The general rule in equity is that all persons materially interested, either legally or beneficially, in the subject-matter of the suit, must be made parties either as complainants or defendants, so that a complete decree may be binding upon all parties.
The Fourth District elaborated on this rule in Phillips v. Choate, 456 So.2d 556, 557 (Fla. 4th DCA 1984) (quoting Shields v. Barrow, 58 U.S. (17 How.) 130, 139, 15 L.Ed. 158 (1855)), where it defined an indispensable party as one whose interest in the controversy is of "such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."
In light of this definition, we must next determine if the presumption of legitimacy that arises whenever a child is born during marriage endows legal fathers with such a material interest in these paternity actions that a final decree cannot be rendered without their joinder. We find that it does.

B. The Presumption of Legitimacy
A child born during marriage is presumed to be the child of both the husband and wife. This presumption of legitimacy is "one of the strongest rebuttable presumptions known to law." Cummings, 871 So.2d at 1059 (quoting G.T. v. Adoption of A.E.T., 725 So.2d 404, 410 (Fla. *608 4th DCA 1999)). As stated earlier, in Privette we recognized that this presumption grants legal fathers an "unmistakable interest" in paternity actions brought by the Department. 617 So.2d at 307. This recognition was grounded in a significant line of caselaw. The presumption of legitimacy protects a legal father's parental rights when another party brings an action to assume those rights. G.F.C. v. S.G., 686 So.2d 1382, 1385 (Fla. 5th DCA 1997) (finding that because the presumption of legitimacy established the legal father's paternity "by law," a putative father could not bring a paternity action under chapter 742, Florida Statutes (1995)); G.T. v. Adoption of A.E.T., 725 So.2d 404, 410 (Fla. 4th DCA 1999) (recognizing that the legal father would have had a right to contest an adoption proceeding if he had acted on this right in a timely fashion). The presumption of legitimacy may even prevent the child's mother from contesting the legal father's parental rights. Hess v. Hess, 466 So.2d 1179, 1179-80 (Fla. 3d DCA 1985) (preventing a mother from challenging visitation rights granted to a legal father in a separation agreement by claiming the legal father is not the biological father of the child). Moreover, once a legal father challenges a paternity action by raising the presumption of legitimacy, he is estopped from later denying paternity and freeing himself from a duty of support. S.B. v. D.H., 736 So.2d 766, 767 (Fla. 2d DCA 1999). In light of this caselaw, we must agree with the Second District that these paternity actions "certainly" impact the legal father's ability to assert his right to a host of interests that lie at the heart of the parent-child relationship. Cummings, 871 So.2d at 1060 (recognizing that the paternity action will "certainly" affect the legal father's rights to the "care, custody and control of the child").
We also agree with the Second District that these proceedings carry significant legal and practical implications because they will likely cause the legal father's name to be removed from the child's birth certificate. See Cummings, 871 So.2d at 1060. At the time the child is born, the legal father's name is listed as the child's father on the birth certificate. § 382.013(2)(a), Fla. Stat. (2000) ("If the mother is married at the time of birth, the name of the husband shall be entered on the birth certificate as the father of the child, unless paternity has been determined otherwise by a court of competent jurisdiction."). The Department's actions to determine paternity would change this without the legal father's knowledge.[3] At the time the Department filed its complaints, Florida law required a court order to remove the legal father's name from a birth certificate; however, the relief requested in these actions would bring about this change. §§ 382.015(2), 382.016(5), Fla. Stat. (2000). Section 382.015 required the clerk of the court to forward a copy of a court order determining paternity to the Department, and the Department was required to amend the birth certificate in accordance with this order. § 382.015(2), Fla. Stat. (2000). It seems that unless the court order expressly prohibited the Department *609 from removing the legal father's name, his name would be removed without his knowledge.
This removal carries significant practical and legal implications Pragmatically, the father named in the birth certificate is generally considered the father of the minor child. Indeed, Florida courts have considered a birth certificate in determining whether a child is a "survivor" in a wrongful death action, whether a man is a "parent" under a kidnapping statute, and as "prima facie evidence" of parentage. See Achumba v. Neustein, 793 So.2d 1013 (Fla. 5th DCA 2001) (finding that the illegitimate child of the deceased was not able to recover in a wrongful death action because the child's birth certificate named the legal father); Muniz v. State, 764 So.2d 729, 730 (Fla. 2d DCA 2000) (holding that the kidnapping statute's exemption for "parents" prevented the man named as father on the child's birth certificate from being charged with the crime). In essence, a legal father's material interests are necessarily impacted by these paternity actions as filed by the Department; therefore, he is an indispensable party. See Hinson v. Hinson, 356 So.2d 372, 374-75 (Fla. 4th DCA 1978) (finding a properly authenticated birth certificate is "prima facie evidence" that the deceased was the father of the child claiming the right to recover in a wrongful death action).

C. The Need for Legislative Consideration
We recognize that these types of cases have long presented Florida courts with significant dilemmas, and as legal scholars have noted, these dilemmas will persist as long as certain statutory provisions remain unchanged.[4] The service of process statute does not permit constructive service of process in paternity cases, and there is no express provision within chapter 409 to authorize constructive service or to ensure that a legal father's interests are appropriately protected. See § 409.257, Fla. Stat. (2000) (requiring personal service); see also § 49.011, Fla. Stat. (2000) (listing the actions and proceedings in which service of process by publication may be made  a list that does not include paternity actions); see also T.J.K. v. N.B., 237 So.2d 592, 595 (Fla. 4th DCA 1970) (holding that constructive service of process is not permitted by statute). Whether the statutes should be modified to address this dilemma is a policy decision for the Legislature to decide.

III. Conclusion

For the reasons stated above, we approve the Second District's holding in Cummings, 871 So.2d 1055, and disapprove Pate, 824 So.2d 1038, to the extent it is inconsistent with this opinion. We hold that a legal father is an indispensable party in an action to determine paternity and to place support obligations on another man unless it is conclusively established that the legal father's rights to the child have been divested by some earlier judgment.
It is so ordered.
WELLS, ANSTEAD, LEWIS, QUINCE, and CANTERO, JJ., concur.
PARIENTE, C.J., concurs in result only.
NOTES
[1] We recognize that chapter 409 has been amended since the Department filed these actions. However, we do not address the amendments in the opinion.
[2] For a more extensive description of the factual background surrounding this case, see the opinion below. Cummings, 871 So.2d at 1056-58.
[3] As stated earlier, we recognize that chapter 409 has been amended since the Department filed the complaints in the circuit court. Effective January 1, 2006, the Legislature amended chapter 409 to permit the Department to initiate an administrative proceeding to determine paternity and an obligation to provide support in actions like these. § 409.256, Fla. Stat. (2005). The Legislature also amended section 382.013 to require the name of the father and the surname of the child be changed automatically pursuant to this proceeding. § 382.013(2)(e), Fla. Stat. (2005). This opinion does not address these amendments.
[4] For an excellent discussion of the presumption of legitimacy and the dilemmas courts confront when faced with children born during marriage but fathered by someone other than the mother's husband, see Chris W. Alternbernd, Quasi-Marital Children: The Common Law's Failure in Privette and Daniel Calls for Statutory Reform, 26 Fla. St. U.L.Rev. 219 (1999).