# Third District Court of Appeal
## State of Florida

Opinion filed October 25, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1316
Lower Tribunal No. 21-24025
_____

**Greater Miami Expressway Agency, et al.,**
Appellants,

vs.

**Miami-Dade County Expressway Authority, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Alan Fine, Judge.

Lawson Huck Gonzalez, PLLC, and Alan Lawson, Jason Gonzalez, Amber Stoner Nunnally, Jessica Slatten, and Taylor Greene (Tallahassee), for appellants.

Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., and Eugene E. Stearns, Glenn Burhans, Jr., and Melanie R. Leitman (Tallahassee); and DeLeon & DeLeon, and Kirk D. DeLeon, for appellee Miami-Dade Expressway Authority; Geraldine Bonzon-Keenan, Miami-Dade County Attorney, and Michael B. Valdes and Miguel A. Gonzalez, Assistant County Attorneys, for appellee Miami-Dade County.

Ryan Newman, General Counsel, and Andrew King, Deputy General Counsel, and Meredith L. Pardo, Assistant General Counsel (Tallahassee), for Governor Ron DeSantis; David Axelman, General Counsel (Tallahassee), for The Florida House of Representatives; Carlos Rey, General Counsel, and Kyle E. Gray, Deputy General Counsel (Tallahassee), for The Florida Senate, as amici curiae.

Before FERNANDEZ, HENDON, and LOBREE, JJ.

HENDON, J.

The Greater Miami Expressway Authority ("GMX") and several individuals sued in their capacities as directors and/or board members of GMX (collectively, "Defendants") appeal the order granting Miami-Dade Expressway Authority's ("MDX") amended motion for summary judgment and the final judgment entered in favor of MDX as to MDX's counts for declaratory relief and to quiet title. For the reasons that follow, we reverse the order granting summary judgment and the final judgment on review.

In October 2021, MDX filed a complaint against the Defendants, seeking declaratory relief, injunctive relief, and to quiet title. MDX asserted that the in rem action concerns rights to the roadways and assets located in Miami-Dade County that are owned and operated by MDX, which assets were either purchased by MDX from the Florida Department of Transportation ("FDOT") pursuant to a Transfer Agreement executed in December 1996, or were acquired by MDX following the execution of the Transfer Agreement. The recorded 1996 Transfer Agreement was attached

2

to the complaint and provides in relevant part as follows:

   **WHEREAS**, [MDX] was established by Ordinance No. 94-215, adopted on December 13, 1994, by the Board of County Commissioners of Dade County, pursuant to the [Florida Expressway Authority] Act [Part I of Chapter 348, Florida Statutes, as amended]; and

   **WHEREAS,** the Act sets forth [MDX's] purposes and powers, which include the power to: (1) acquire, hold, construct, improve, maintain, operate, own, and lease the expressway system located in Dade County and identified more particularly in Exhibit A hereto (the "System")[1]; (2) fix, alter, change, establish, and collect tolls, rates, fees, rentals, and other charges for the services and facilities of the System; and (3) utilize surplus revenues to finance or refinance the planning, design, acquisition, construction, maintenance or improvement of a public transportation facility or transportation facilities located in Dade County or any programs or projects that will improve the levels of service on the System; and

   **WHEREAS**, [FDOT] and [MDX] have agreed to a transfer of operational and financial control of the System from [FDOT] to [MDX] on the date hereof upon the terms and conditions here set

---

[1] Exhibit A of the Transfer Agreement reflects that the Dade County Expressway System, which is now known as MDX, includes the Airport Expressway (SR 112), the East-West (Dolphin) Expressway (SR 836), South Dade (Don Shula) Expressway (SR 874), Snapper Creek Expressway (SR 878), Gratigny Parkway (SR 924), and "the Non-Roadway Assets identified on Exhibit B to the Transfer Agreement and the fund balances in Exhibit C to the Transfer Agreement." Moreover, Exhibit B provides:

Upon execution of this agreement, [FDOT] shall transfer ownership of all property, with the exception of the infrastructure, located at the Dade County Expressway System listed in Exhibit A to [MDX]. The transfer of property includes, buildings, toll booths, toll equipment and other property (both over and under $500) detailed on the following pages. In addition, all miscellaneous items such as supplies and small equipment, such as staplers, etc., shall become the property of [MDX].

forth; and

**WHEREAS,** the duties of all parties in implementing the transfer of operational and financial control of the System from [FDOT] to [MDX] are set forth in this Agreement; and

**WHEREAS,** the System is currently financed with bonds of the State of Florida denominated Full Faith and Credit Dade County Road Refunding Bonds, Series 1993 (the "State Bonds") in the aggregate outstanding principal amount of $91,300,000 supported by revenues of the System; and

**WHEREAS,** the System cannot be transferred until provision is made for the defeasance of the State Bonds and the simultaneous termination of the 1989 Lease-Purchase Agreement Covering Dade County Projects dated as of April 5, 1989 (the "Lease-Purchase Agreement") among [FDOT], the Division of Bond Finance of the State Board of Administration of Florida (formerly known as the Division of Bond Finance of the Department of General Services of the State of Florida) (the "Division") and Dade County, Florida (the "County"); and

. . . .

**NOW, THEREFORE,** the parties . . . agree as follows:

. . . .

### 3. Transfer of the System.

(a) [FDOT] shall promptly record this Agreement showing transfer of operational and financial control of the System pursuant to this Agreement . . . . [FDOT] and [MDX] acknowledge that, upon such recordation, conveyance and transfer, [MDX] shall have acquired full jurisdiction and control over the operation, maintenance and finances of the System in perpetuity, including, including, without limitation, all right to regulate, establish, collect and receive tolls thereon. . . .

The Defendants moved to dismiss the complaint for failure to join an indispensable party—FDOT. In arguing that FDOT is an indispensable party, the Defendants asserted that, following the execution of the Transfer

4

Agreement, FDOT still owned the relevant expressway system in Miami-Dade County, and therefore, MDX cannot quiet title to the expressway system unless FDOT is a party to the underlying action.

The trial court denied the Defendants' motion to dismiss the complaint. Thereafter, the Defendants filed an answer and affirmative defenses, asserting that FDOT is an indispensable party which MDX failed to join.

MDX filed an amended motion for summary judgment. In opposing the motion for summary judgment, the Defendants renewed their motion to dismiss for failure to join an indispensable party. In support, the Defendants filed the affidavit of FDOT's District Six Secretary, which explained, in part:

> 4. When the County created MDX in 1994, FDOT owned the expressways within the geographic boundaries and jurisdiction of the County. To date, FDOT still owns the original rights of way of the System.
> 5. In 1996, FDOT and MDX entered into a "transfer agreement" that transferred "operational and financial control" of five expressways ("System") to MDX. The transfer agreement transferred *only* "operational and financial control" of the System. FDOT granted to MDX the right to collect toll revenue generated from the System in return for $91 million of that toll revenue. Ownership of the System was *never* transferred to MDX."

Following a hearing, the trial court entered an order granting MDX's motion for summary judgment, and thereafter, entered a final judgment in favor of MDX and against the Defendants. The final judgment provides, in part, that "the Transfer Agreement conveyed to MDX exclusive, irrevocable,

5

and non-transferrable interests in perpetuity in the real and personal property interest contemplated therein[.]"  Based on this determination, the trial court, among other things, quieted title to the expressway system in Miami-Dade County in favor of MDX.  The Defendants' appeal followed.

The Defendants contend the trial court erred by denying their motion to dismiss for failure to join an indispensable party—FDOT.  We agree.

"An indispensable party is one whose interest in the controversy makes it impossible to completely adjudicate the matter without affecting either that party's interest or the interests of another party in the action."  Fla. Dep't of Revenue v. Cummings, 930 So. 2d 604, 607 (Fla. 2006) (citations omitted); see also Diaz v. Impex of Doral, Inc., 7 So. 3d 591, 594 (Fla. 3d DCA 2009). Pertinent to the issue of whether FDOT is an indispensable party to the underlying action is the effect of the Transfer Agreement executed by FDOT and MDX in 1996.

In the final judgment, the trial court found that "the Transfer Agreement conveyed to MDX exclusive, irrevocable, and non-transferrable interest in perpetuity in the real and personal property interests contemplated therein." MDX argues that this determination is supported by the language in the Transfer Agreement because FDOT transferred to MDX all of its rights relating to the pertinent expressway system, including ownership of the

6

expressway system. The Defendants, however, challenge the trial court's determination. The Defendants assert that the Transfer Agreement did not transfer the ownership of the expressway system to MDX. More specifically, as averred by FDOT's District Six Secretary, the "[T]ransfer [A]greement transferred *only* 'operational and financial control' of the System. FDOT granted to MDX the right to collect toll revenue generated from the System in return for $91 million of that toll revenue." (italics in original). We agree with the Defendants. As only the "operational and financial control" of the expressway system, not the ownership of the expressway system itself, was transferred to MDX, FDOT is an indispensable party to the underlying action seeking to quiet title to the expressway system itself. As such, the trial court erred by denying the Defendants' motion to dismiss for failure to join an indispensable party. Accordingly, we reverse the order granting MDX's motion for summary judgment and the final judgment in favor of MDX and against the Defendants, and remand with instructions for the trial court to enter an order granting the Defendants' motion to dismiss without prejudice. See Fla. Dep't of Revenue, ex. rel A.L. v. S.B., 124 So. 3d 377, 378 (Fla. 2d DCA 2013) ("A dismissal for failing to join an indispensable party should be without prejudice, unless the pleader refuses to amend to add a party necessary for a determination on the merits.").

7

Based on our disposition of the above issue, we do not need to address the remaining arguments raised by the Defendants.  Further, we take no position as to those arguments.

Reversed and remanded.