947 So.2d 1254 (2007)
Terry R. GLOVER, Appellant,
v.
Kenneth MILLER, Appellee.
No. 4D06-3705.
District Court of Appeal of Florida, Fourth District.
January 31, 2007.
Rehearing Denied February 14, 2007.
*1255 Patrick S. Cousins and Sandra M. Powery of Cousins Law Firm, P.A., West Palm Beach, for appellant.
Steven M. Goldsmith of Steven M. Goldsmith, P.A., Boca Raton, T.J. "Jimmy" Cunningham, Jr. of T.J. Cunningham, Jr., P.A., West Palm Beach, Donald N. Watson and Ginger Jenkins Cartwright of Gary, Williams, Parenti, Finney, Lewis, McManus, Watson & Sperando, Stuart, for appellee.
WARNER, J.
Sixteen-year-old Jerrod Miller was shot to death by a police officer. His death precipitated an unusual contest between two men both claiming fatherhood and the right to be appointed personal representative of Jerrod's estate to pursue an anticipated wrongful death action on behalf of the estate and Jerrod's survivors. One man, Kenneth Miller, was declared Jerrod's father by a 1995 adjudication of paternity and judgment requiring child support. Posthumous DNA testing in 2006 revealed a 99% likelihood that Terry Glover is really the biological father of Jerrod. The trial court determined that Kenneth Miller was Jerrod's father as a result of the paternity adjudication. It thus denied appellant Glover's petition for administration. We affirm, concluding that Glover is not at present an heir in accordance with the applicable statutes and thus is not entitled to preference in appointment as personal representative.
Gwendolyn Cornelius gave birth out of wedlock to twin boys, Jerrod and Sherrod Miller. They carried the surname of Kenneth Miller, who had been living with Cornelius. Miller signed the birth certificate as their father. The couple lived together for several years before the twins' birth and continued to reside together for approximately fourteen years, with occasional breakups throughout the relationship. They had two other children together. After the end of their relationship, the twins continued to visit Miller.
Miller believed he was the natural father of Jerrod and Sherrod, raising them as any father would raise his childrenhelping with homework, going to sporting events with them, disciplining them, talking to them about girls, and the like. In 1995, the Department of Revenue filed a paternity action against Miller on behalf of Cornelius. He failed to answer the petition, and the court entered a default judgment against him. The court adjudicated Miller to be the twins' father and imposed a duty of support. Pursuant to that order, Miller paid support through deductions from his employment compensation. He has a remaining and unpaid obligation for support of the twins, although the amount of the outstanding arrearages is in question.
According to Glover, Cornelius told Glover that he was the actual father of the twins shortly after their birth. But Glover never had a relationship with either boy. Cornelius died in 2003. At her funeral, Glover stated that he told the twins that he was their natural father, but neither Glover nor the twins told Miller about Glover's claim to fatherhood. After Cornelius' death, Miller obtained temporary custody of the children.
*1256 Jerrod was tragically killed by a Delray Beach police officer in 2005. Miller filed a petition for administration requesting his appointment as personal representative of the estate as Jerrod's closest relative. Shortly after, Glover filed his own petition for administration, alleging that he was Jerrod's biological father. He also filed a petition to release a specimen for DNA testing. The court permitted that testing because of Sherrod's desire to know his true biological father. The results confirmed that Glover was the twins' biological father.
The court held a hearing on Glover's right of appointment and contention that as the biological father of Jerrod, he was Jerrod's heir and entitled to administer the estate. After hearing all of the evidence, the trial court ruled that Glover was not entitled to appointment, because Miller was the father of Jerrod by the judgment of paternity. Glover had not moved to set aside that final judgment, and thus the declaration that Kenneth Miller was Jerrod's father was still in effect. Therefore, Glover had no right to appointment as administrator of the estate. Glover appeals.
Section 733.301(1)(b), Florida Statutes (2006), governs the preference in appointment of personal representatives. The statute prescribes the following order of preference for intestate estates: 1. The surviving spouse, 2. The person selected by a majority in interest of the heirs, 3. The heir nearest in degree. If more than one applies, the court may select the one best qualified. The term "heirs," in turn, is defined as "those persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the property of a decedent." § 731.201(18), Fla. Stat. (2006). If the decedent has no spouse or lineal descendants, his heirs by intestate succession are his parents or the survivor of them. § 732.103, Fla. Stat. (2006).
Where children are adopted or born out of wedlock, natural kinship is not necessarily recognized for purposes of establishing a decedent's heirs and thus intestate succession. Section 732.108, Florida Statutes (2006) provides:
(1) For the purpose of intestate succession by or from an adopted person, the adopted person is a lineal descendant of the adopting parent and is one of the natural kindred of all members of the adopting parent's family, and is not a lineal descendant of his or her natural parents. . . .
(2) For the purpose of intestate succession in cases not covered by subsection (1), a person born out of wedlock is a lineal descendant of his or her mother and is one of the natural kindred of all members of the mother's family. The person is also a lineal descendant of his or her father and is one of the natural kindred of all members of the father's family, if:
(a) The natural parents participated in a marriage ceremony before or after the birth of the person born out of wedlock, even though the attempted marriage is void.
(b) The paternity of the father is established by an adjudication before or after the death of the father.
(c) The paternity of the father is acknowledged in writing by the father.
(emphasis added). Section 732.101(2) provides that the decedent's date of death is the event vesting the heirs' rights to intestate property. At the date of Jerrod's death, Glover was not considered Jerrod's father for purposes of intestate succession, because he never married Jerrod's mother, was never adjudicated to be his father, and never acknowledged in writing that he was *1257 Jerrod's father. In contrast, Miller was Jerrod's father for purposes of intestate succession because he was adjudicated to be Jerrod's father. Thus, Miller's rights vested on Jerrod's death because he is Jerrod's father by a paternity judgment. Jerrod was a lineal descendant of Miller within the meaning of section 732.108(2)(b), so he is an heir for purposes of section 733.301(1)(b)3.
Although it is possible to establish paternity in a probate proceeding, see In re Estate of Smith, 685 So.2d 1206, 1208 (Fla.1996), where a chapter 742 paternity action has previously been brought, any resulting determination of paternity has the effect of determining the issue for intestate succession. Id. Section 732.108(2)(b) does not create a separate independent cause of action to establish paternity. Id. It merely explains the effect of an adjudication of paternity. Id. at 1208 n. 2. Therefore, unless the adjudication of Miller's paternity is vacated, that adjudication must be given the effect of establishing Miller as Jerrod's father for the purposes of intestate succession.
As noted by the trial court, Glover did not move to set aside the adjudication of Miller's paternity. His petition for administration of the estate merely alleged that he is the biological father of Jerrod. Yet Miller is Jerrod's father in the eyes of the law, regardless of the results of DNA testing.[1] The legal father has substantial rights (in this case vested rights) which cannot be lightly dismissed, even by the discovery that the legal father is not the biological father. In fact, our supreme court has held that the mere fact that biological testing shows that a man other than a legal father is the biological father of the child without more does not require the granting of a paternity petition. Dep't of Health & Rehabilitative Servs. v. Privette, 617 So.2d 305 (Fla.1993).
Furthermore, to set aside the adjudication of paternity would require the presence of other parties and would affect other rights. The Department of Revenue was a party to the prior proceeding, as it initially filed the paternity action not only to establish support payable to Cornelius but to collect from Miller for public assistance paid to Cornelius for both boys. Miller and the Department of Revenue should have the opportunity to defend an action to vacate the prior adjudication and present any affirmative defenses available, including any defense of laches, considering the fact that Glover stated that he knew of his probable fatherhood shortly after the children were born yet failed to take any action to declare his parenthood or to develop any relationship with the children until after Jerrod's death.[2] What is more, Glover allowed another man to be a "father" to his children and to be obligated to pay child support for both boys for eleven years. Miller might even assert a claim against Glover for the child support he has paid, should a court vacate the paternity adjudication and declare Glover to be the twins' legal father. Sherrod, the twin brother, would also be affected by such a decree, as it would cut off his rights as a lineal descendant of the Miller family, *1258 pursuant to statute, and make him an heir of Glover and his family.
Because any determination of paternity will involve many other parties and have effects more far reaching than a mere adjudication of the biological connection between Jerrod and Glover, we are not convinced that such a determination can and should be made as part of the probate proceedings where the only issue to be determined is intestate succession. We agree with the trial court that in order for Glover to assert a right as an heir, the existing judgment of paternity would have to be vacated. A child cannot have two legally recognized fathers. See Achumba v. Neustein, 793 So.2d 1013, 1015 (Fla. 5th DCA 2001).
Unlike every other case cited to us, there is an existing adjudication of paternity in this case. There is no need to establish paternity for Jerrod. He has a father, Kenneth Miller, who is his heir at law. Glover is not his heir and thus is not entitled to appointment as administrator.
We therefore affirm the order of the trial court denying Glover's petition for administration.
GROSS and TAYLOR, JJ., concur.
NOTES
[1] Glover's contention that he is entitled to summary judgment of fatherhood based upon DNA testing alone is also statutorily inaccurate. Where DNA testing shows a 95 percent or more confidence level that the man is the biological father, it creates only a rebuttable presumption of fatherhood. § 742.12(4), Fla. Stat. (2006).
[2] We agree that the paternity adjudication is not res judicata as to Glover because he was not a party to those proceedings. See In re Estate of Robertson, 520 So.2d 99 (Fla. 4th DCA 1988). We strongly disagree that it has no effect in this proceeding.