WARNER, J.
 

 The personal representative of the estate of Shea Daniels appeals a summary judgment which determined that Daniels’s son, Javon Daniels, was not a survivor under the Wrongful Death Act, because at the time of Javon’s birth, his mother was married to another man, although the mother had not seen her husband for several years. We hold that under the unique circumstances of this case, the court erred in determining as a matter of law that the child is not a survivor in accordance with the wrongful death statute. We reverse.
 

 
 *910
 
 Javon Daniels was born to Rozine Ce-rine and the decedent, Shea Daniels. Ro-zine had been married to Willie Washington in 1999, but they separated in 2000 when Washington moved away and joined the military. She met Shea in May 2000, and Javon was born in September 2001. Shea’s name was listed on the birth certificate as the father.
 

 Shea and Rozine had a difficult relationship, but he supported Rozine and Javon by paying support of $50-70 per week. He also bought clothes for Javon. His mother, Dorothy, visited with Javon on occasion.
 

 Rozine filed a petition to determine paternity and for child support against Shea in October 2004. Shea answered, demanding a DNA test, which was ordered but never conducted because Shea failed to appear. He was defaulted in the paternity proceeding, but a judgment establishing paternity was never entered. In November 2004, Rozine obtained a divorce from Willie Washington. The record does not contain a copy of the divorce decree.
 

 Shea committed suicide in 2005, and his mother brought a wrongful death action on behalf of Javon against a psychiatrist and hospital. Both answered and claimed that Javon was not a survivor, because the presumption of legitimacy required that Willie Washington be deemed Shea’s legal father. Thus, Javon could not be a surviv- or of Shea.
 

 During the proceedings, the plaintiff conducted a paternity test which showed that Shea was the biological father of Ja-von. Although the court questioned whether such a test should have been authorized, it had granted a continuance for the plaintiff to obtain the test. The test merely confirmed what the birth certificate already recorded. Shea was Javon’s father.
 

 Despite the evidence supporting the fact that Shea was not only the biological father but also the only father that Javon knew, the court held that because Rozine was married to Willie Washington when Javon was born, the presumption of legitimacy required it to declare as a matter of law that Washington was Javon’s legal father in the wrongful death action. The court granted the motion, excluding Javon as a survivor of his biological father. It also refused a request to abate the wrongful death action to permit a paternity action to be instituted to declare Shea’s paternity of Javon. The personal representative appeals.
 

 The personal representative argues that the trial court erred in refusing to allow her to prove that the decedent was Javon’s father, because resolution of paternity may occur in a wrongful death case. The ap-pellees contend that the trial court correctly granted summary judgment because the child was born during the mother’s marriage to another man who, by operation of law, was the legal father of the child and his parental rights had not been legally divested. We hold that the presumption is not a conclusive presumption and the issue of survivorship is to be determined in the wrongful death proceeding.
 

 Florida’s Wrongful Death Act is codified in sections 768.16-768.26, Florida Statutes. The purpose of the Wrongful Death Act is to “shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer.” § 768.17, Fla. Stat. See
 
 also Fla. Convalescent Ctrs. v. Somberg,
 
 840 So.2d 998, 1008 (Fla.2003) (stating that purpose of the Act is “to provide recovery to those who need it, specifically the surviving spouse, children, and dependents of the decedent”) (citation omitted). The Act is remedial in nature and must be liberally construed. § 768.17, Fla. Stat.
 

 The personal representative sought to recover damages on behalf of Javon under
 
 *911
 
 section 768.21, Florida Statutes, which permits a survivor to recover for loss of services and allows a minor child to recover damages for loss of parental companionship as well as mental pain and suffering. A “survivor” is defined under the Act as:
 

 the decedent’s spouse, children, parents, and, when partly or wholly dependent on the decedent for support or services, any blood relatives and adoptive brothers and sisters. It includes the child born out of wedlock of a mother, but not the child born out of wedlock of the father unless the father has recognized a responsibility for the child’s support.
 

 § 768.18(1), Fla. Stat. A “minor child” is defined as a child “under 25 years of age, notwithstanding the age of majority.” § 768.18(2), Fla. Stat.
 

 Two courts have considered and reached opposite conclusions on the issue of whether a child born during a marriage can maintain a claim as a survivor of a third party decedent where the decedent is the child’s biological father but the husband’s parental rights have never been divested. The Fifth District in
 
 Achumba v. Neustein,
 
 793 So.2d 1013 (Fla. 5th DCA 2001), answered this question in the negative, while the Third District in
 
 Coral Gables Hospital, Inc. v. Veliz,
 
 847 So.2d 1027 (Fla. 3d DCA 2003), concluded the opposite. We side with
 
 Veliz
 
 on the issue and find
 
 Achumba
 
 distinguishable on the facts from this case.
 

 In
 
 Achumba,
 
 the personal representative, Achumba, brought a claim on behalf of her child, Smoot, under the Wrongful Death Act against a doctor for negligent medical treatment of the decedent, Honor, whom she alleged was the child’s biological father. The doctor moved for summary judgment because at the time of the child’s birth, the mother was married to another man, Beekford,
 
 and
 
 Beekford’s name was on the child’s birth certificate. The trial court granted summary judgment in favor of the doctor, and the majority affirmed. The court explained:
 

 Because Smoot was born during the marriage of Achumba and Beekford,
 
 and Beekford is listed on Smoot’s birth certificate as the father,
 
 there is a presumption of paternity in favor of Beckford.
 
 Contino v. Estate of Contino,
 
 714 So.2d 1210, 1214 (Fla. 3d DCA 1998). Under Florida law, Beekford is Smoot’s “legal father.”
 
 See Dep’t of Health & Rehabilitative Servs. v. Privette,
 
 617 So.2d 305, 307 (Fla.1993). Hence, she was not, as asserted by Achumba, born “out of wedlock of the father.” To recognize Honor as Smoot’s father would necessarily impugn Beckford’s parental rights. A child’s legally recognized father has an unmistakable interest in maintaining the relationship with his child unimpugned.
 
 See id.; see also Santosky v. Kramer,
 
 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).
 

 Id.
 
 at 1014-15 (emphasis supplied) (footnote omitted). The court opined that unless and until Beckford’s status as the legal father is changed Honor could not be recognized as the child’s father no matter what his biological relationship to her may be, as “Florida does not recognize dual fathership.”
 
 Id.
 
 at 1015. Moreover, the child’s paternity could not be resolved in the context of a wrongful death action, because chapter 742, Florida Statutes, is the exclusive remedy for establishing paternity in Florida and the husband’s due process rights as the child’s legal father were not considered in the pending wrongful death action.
 

 In a cogent dissent, Judge Griffin doubted both “the accuracy and the wisdom of the premise on which the majority opinion is based.”
 
 Id.
 
 at 1016. She looked to this court’s opinion of
 
 In re Estate of Robertson,
 
 520 So.2d 99 (Fla. 4th DCA 1988), in which we held that the illegitimate daugh
 
 *912
 
 ter of the decedent could inherit from his estate, even though her mother was married to another man at her birth. Judge Griffin argued:
 

 If
 
 Robertson
 
 is correct that the existence of a legal father does not prevent a natural child from inheriting by intestate succession, the Wrongful Death Act should likewise be interpreted to allow the natural child to be a wrongful death claimant. Contrary to the view of the majority, allowing a child to share in the estate of the natural father through intestate succession or through a wrongful death proceeding in no way impugns or alters the legal father’s relationship with the child.
 

 Id.
 
 at 1017. She also noted that practical considerations make it desirable for this issue to be raised and determined in the wrongful death proceeding, such as the shortness of the two-year statute of limitations for bringing a wrongful death claim. She criticized the judicial rule requiring the child to choose between fathers, at least one of whom is deceased, by undertaking a paternity suit to which the legal father, if living, must be joined as a real party in interest. She maintained, “There is no reason the relationship of the natural child to the wrongful death victim cannot simply be alleged and proved up in a wrongful death action.”
 
 Id.
 

 Adopting Judge Griffin’s position and conflicting with the majority in
 
 Admmba,
 
 the Third District in
 
 Veliz
 
 held that the determination of paternity for purposes of survivorship in a wrongful death action could be made by the jury. The court noted that the defendant hospital could not show how it could be prejudiced by determining the issue in the context of a wrongful death action. Although the court certified conflict, the case was dismissed in the supreme court.
 

 We begin our own analysis with the statutory text. A survivor “includes the child born out of wedlock of a mother, but not the child born out of wedlock of the father unless the father has recognized a responsibility for the child’s support.” § 768.18(1), Fla. Stat. The “child born” can refer only to a biological child. “Out of wedlock” means that the father and mother of the child were not married. Thus, the clear meaning of the phrase is that a biological child born to a father not married to the child’s mother may be a “survivor” under the wrongful death act if the biological father recognized a responsibility of the child’s support. The statute does not require a legal determination of paternity: It merely requires recognition by the biological father of a responsibility of support. There is no presumption of legitimacy within the statute which would preclude Javon from his ability to claim loss based upon his survivorship status. Thus, the statute appears to benefit the child by permitting recovery from the biological father without undermining the relationship that the child might have with a “legal father.” Under the clear language of the statute, the motion for summary judgment should not have been granted, because Javon is a “survivor” of Shea based upon the evidence of Shea’s support of Javon and the DNA test, as well as the birth certificate listing Shea as the father.
 

 Admmba
 
 is distinguishable from the present case, because the birth certificate in
 
 Admmba
 
 listed the husband of the mother as the child’s father. It is the listing of the father on the birth certificate which provides the presumption of legitimacy. Indeed, in
 
 Department of Health & Rehabilitative Services v. Privette,
 
 617 So.2d 305, 307 (Fla.1993), the court equated the “legal father” with “the one listed on the birth certificate.” In this case, Shea, and not the husband, is listed as the father of the child. Thus, according to
 
 Privette,
 
 Shea is both the biological father and the legal father of Javon.
 

 
 *913
 
 Some confusion has occurred in supreme court analysis, because in
 
 Florida Department of Revenue v. Cummings,
 
 930 So.2d 604 (Fla.2006), in discussing the necessity of notice to the legal father of pending actions for paternity between a mother and a putative father, the court said, “The issue before us is whether a
 
 legal father He., a man married to the child’s mother at the time of birth)
 
 is an indispensable party in a paternity action .... ”
 
 Id.
 
 at 605 (emphasis supplied). However, it is clear from the analysis that the court assumes that the legal father and the husband of the mother are the same, and the husband’s name will be on the birth certificate of the child, citing section 382.013(2)(a), Florida Statutes (2000) (“If the mother is married at the time of birth, the name of the husband shall be entered on the birth certificate as the father of the child, unless paternity has been determined otherwise by a court of competent jurisdiction.”).
 
 Id.
 
 at 608. Paternity proceedings may require that the “legal” father be removed from the birth certificate.
 

 In this case, the birth certificate lists Shea as Javon’s father. Therefore, on the same analysis as the
 
 Cummings
 
 court required, Shea’s interest as Javon’s legal father cannot be ignored.
 
 Cummings
 
 states that the legal father, i.e., the father listed on the birth certificate, is an indispensable party to paternity proceedings. Here, Washington, the husband, was not the “legal father” of Javon. Therefore, he was not an indispensable party to these survivorship proceedings.
 

 The appellees suggest that the statute requiring the husband’s name on the birth certificate trumps the listing of Shea’s name on the birth certificate. In a case where the biological father was listed on the birth certificate, instead of the husband of the mother, the Second District Court of Appeals agreed that the listing was in error.
 
 See S.B. v. D.H.,
 
 736 So.2d 766 (Fla. 2d DCA 1999). Under such circumstances, it held that “a putative biological father, cannot maintain this paternity action concerning a child conceived by a married woman
 
 when both the married woman and her husband object.” Id.
 
 at 767 (emphasis supplied). Here, of course, the husband does not object and in fact is divorced from the mother.
 
 [1]
 

 Finally, historically the presumption of legitimacy of a child born during wedlock is a strong one, aimed at preventing a husband of the mother avoiding responsibilities to the child. In
 
 Eldridge v. Eld,ridge,
 
 153 Fla. 873, 16 So.2d 163, 163-64 (1944), the court discussed the historical underpinnings:
 

 Where the legitimacy of a child born in wedlock is questioned by the husband and reputed father, one of the strongest rebuttable presumptions known to the law is required to be overcome before the child can be bastardized. At common law the presumption was at one time virtually conclusive. Law of Illegitimacy by Hooper, p. 202;
 
 Anon v. Anon
 
 (1856), 22 Beav. 481, 23 Beav. 273. The rule was relaxed later in England and the latter case was overruled in 1903 in The Poulett Peerage A.C. 395.
 
 See also Hargrave v. Hargrave,
 
 9 Beav. 552, 50 English Reprint 458. The rule is well established in this country that the husband may make the attack, but in so doing he must overcome the strong presumption of legitimacy by clear and satisfactory testimony. Marriage, Divorce, Separation and Domestic Relations by
 
 *914
 
 Schouler (6d) Vol. 1, p. 760,
 
 Lay v. Fuller,
 
 178 Ala. 375, 59 So. 609; 7 C.J. 953, 10 C.J.S., Bastards, § 3, page 18, § 15, page 76. The better rule is that the husband is not required to prove his contention beyond all reasonable doubt, yet his proof must be sufficiently strong to clearly remove the presumption of legitimacy.
 

 Later in
 
 Sacks v. Sacks,
 
 267 So.2d 73, 75 (Fla.1972), in a divorce proceeding involving the husband’s attack on the legitimacy of his child, the court noted that the presumption of legitimacy should not “obscure the true issue before the Court; that is, the child. The child’s welfare is paramount. Too often this is forgotten.”
 
 See also Blitch v. Blitch,
 
 341 So.2d 251 (Fla. 1st DCA 1976).
 

 Thus, the presumption of legitimacy is just that — a presumption. It is a presumption which operates in family law settings to prevent a husband’s rights from being terminated and for the child’s best interests in his or her legitimacy and support from his or her father.
 
 If
 
 the presumption of legitimacy has any place in wrongful death survivorship questions, it may be overcome by clear and strong evidence to rebut that presumption. Here, there is ample evidence, including the mother’s attestation of Shea’s fatherhood, the birth certificate, and the DNA results. It is certainly
 
 not
 
 in the child’s best interest to blindly apply this presumption of legitimacy to these proceedings and prevent the personal representative from asserting claims on behalf of Javon for the loss of his father, the only father he has ever known.
 

 Because the trial court erred in determining that Javon was not a survivor of Shea, we reverse. The issue of survivor-ship has not been finally determined, as no competing or cross-motion for summary judgment has been made. We therefore remand for further proceedings to resolve the issue either pretrial or before the jury as occurred in
 
 Veliz.
 

 POLEN and TAYLOR, JJ., concur.
 

 [1]
 

 . Although we asked at oral argument, neither party could tell us whether the decree of divorce had any recitation regarding Javon or any child born of the marriage. If there was, then this may be evidence which might be presented to the jury on the issue of survivor-ship.