LABARGA, J.
 

 Petitioners Jonathan Greenfield, M.D., Jonathan Greenfield, M.D., P.A. (hereinafter “Dr. Greenfield”), and Tenet St. Mary’s, Inc., d/b/a St. Mary’s Medical Center (hereinafter “St. Mary’s”), seek review of the decision of the Fourth District Court of Appeal in
 
 Daniels v. Greenfield,
 
 15 So.3d 908 (Fla. 4th DCA 2009), on the ground that it expressly and directly conflicts with the decision of the Fifth District Court of Appeal in
 
 Achumba v. Neustein,
 
 793 So.2d 1013 (Fla. 5th DCA 2001), on a question of law. Greenfield and St. Mary’s filed them notices separately, but the two cases have been consolidated in this Court. We have jurisdiction.
 
 See
 
 art. V, § 3(b)(3), Fla. Const. As explained below, we approve the decision in
 
 Daniels v. Greenfield
 
 and, accordingly, disapprove the decision in
 
 Achmnba
 
 to the extent it is inconsistent with this opinion.
 

 FACTS AND PROCEDURAL HISTORY
 

 The conflict issue in this case centers on whether, in a wrongful death action, a survivor’s claim may be brought on behalf of a child who is alleged to be the decedent’s biological child but whose mother was married to another man at the time of the child’s conception and birth. If so, a further question arises as to whether the facts necessary to establish that the child qualifies as a “survivor” under section 768.18(1), Florida Statutes (2005), may be determined in a wrongful death action brought under chapter 768, Florida Statutes (2005), rather than in a paternity action brought under chapter 742, Florida Statutes (2005).
 
 [1]
 
 The Fourth District in
 
 Daniels
 
 answered both questions in the affirmative and, as explained below, we agree.
 

 This case arose from a wrongful death action filed by the estate of Shea Daniels (“the estate”) in the Circuit Court in and for Palm Beach County in September 2007. Daniels committed suicide on September 18, 2005. The complaint filed by Daniels’ mother as personal representative of his estate alleged that he was a psychiatric patient of Dr. Greenfield and was treated at St. Mary’s Medical Center in September 2005. The complaint further alleged, in pertinent part, that Daniels was negligently discharged by Dr. Greenfield and by the hospital without a proper discharge assessment, even though his last assessment by a physician indicated he was possibly suicidal. The complaint sought relief for both the estate and for J.D., a minor child alleged to be the surviving biological son of the decedent and for whom noneconomic damages for loss of consortium were sought.
 

 Dr. Greenfield filed a motion and amended motion for partial summary judgment alleging that a survivor claim could
 
 *423
 
 not properly be brought on behalf of J.D.
 
 [2]
 
 The grounds asserted for summary judgment were that J.D.’s mother was married to someone other than the decedent when J.D. was conceived and born, the mother’s husband’s paternal rights had not been divested, and the husband was not a party to the estate’s suit.
 

 At the hearing on the motion for partial summary judgment, the circuit court ruled that
 

 this is civil court, not the family court. The presumption [that the husband is the father] is rebuttable in family court not in civil court. As a matter of law, Mr. Washington [the mother’s husband] is the father of the child until the family court says otherwise.
 

 The court granted the motion for partial summary judgment relating to the surviv- or claims for J.D., citing in the written order the reasons set forth on the record at the hearing. The estate moved the court to rehear the motion, stay the case, and allow the estate to seek a paternity ruling in family court, but the motion was denied. The court entered a final judgment in favor of Dr. Greenfield and St. Mary’s Medical Center as to all of the claims pertaining to J.D., again making reference to the grounds given at the hearing. The estate appealed to the Fourth District Court of Appeal.
 

 The facts set forth in the Fourth District’s decision are stated as follows:
 

 [J.D.] was born to Rozine Cerine and the decedent, Shea Daniels. Rozine had been married to Willie Washington in 1999, but they separated in 2000 when Washington moved away and joined the military. She met Shea in May 2000, and [J.D.] was born in September 2001. Shea’s name was listed on the birth certificate as the father.
 

 Shea and Rozine had a difficult relationship, but he supported Rozine and [J.D.] by paying support of $50-70 per week. He also bought clothes for [J.D.]. His mother, Dorothy, visited with [J.D.] on occasion.
 

 Rozine filed a petition to determine paternity and for child support against Shea in October 2004. Shea answered, demanding a DNA test, which was ordered but never conducted because Shea failed to appear. He was defaulted in the paternity proceeding, but a judgment establishing paternity was never entered. In November 2004, Rozine obtained a divorce from Willie Washington. The record does not contain a copy of the divorce decree.
 

 Shea committed suicide in 2005, and his mother brought a wrongful death action on behalf of [J.D.] against a psychiatrist and hospital. Both answered and claimed that [J.D.] was not a surviv- or, because the presumption of legitimacy required that Willie Washington be deemed Shea’s legal father. Thus, [J.D.] could not be a survivor of Shea.
 

 During the proceedings, the plaintiff conducted a paternity test which showed that Shea was the biological father of [J.D.]. Although the court questioned whether such a test should have been authorized, it had granted a continuance for the plaintiff to obtain the test. The test merely confirmed what the birth certificate already recorded. Shea was [J.D.’s] father.
 

 Despite the evidence supporting the fact that Shea was not only the biological father but also the only father that [J.D.] knew, the court held that because Rozine was married to Willie Washington when [J.D.] was born, the presumption of legitimacy required it to declare
 
 *424
 
 as a matter of law that Washington was [J.D.’s] legal father in the wrongful death action. The court granted the motion, excluding [J.D.] as a survivor of his biological father. It also refused a request to abate the wrongful death action to permit a paternity action to be instituted to declare Shea’s paternity of [J.D.]. The personal representative appeals.
 

 Daniels,
 
 15 So.3d at 910. The Fourth District reversed the trial court, explaining:
 

 We begin our own analysis with the statutory text. A survivor “includes the child born out of wedlock of a mother, but not the child born out of wedlock of the father unless the father has recognized a responsibility for the child’s support.” § 768.18(1), Fla. Stat. The “child born” can refer only to a biological child. “Out of wedlock” means that the father and mother of the child were not married. Thus, the clear meaning of the phrase is that a biological child born to a father not married to the child’s mother may be a “survivor” under the wrongful death act if the biological father recognized a responsibility of the child’s support. The statute does not require a legal determination of paternity. It merely requires recognition by the biological father of a responsibility of support. There is no presumption of legitimacy within the statute which would preclude [J.D.] from his ability to claim loss based upon his survivorship status. Thus, the statute appears to benefit the child by permitting recovery from the biological father without undermining the relationship that the child might have with a “legal father.” Under the clear language of the statute, the motion for summary judgment should not have been granted, because [J.D.] is a “survivor” of Shea based upon the evidence of Shea’s support of [J.D.] and the DNA test, as well as the birth certifícate listing Shea as the father.
 

 Id.
 
 at 912.
 

 The Fourth District in
 
 Daniels
 
 expressly recognized that
 
 Achumba
 
 held that a child born during a marriage cannot maintain a claim as a survivor of a third-party decedent — even if the decedent is the child’s biological father — where the status of the mother’s husband as “legal father” has not been changed.
 
 Daniels,
 
 15 So.3d at 911 (citing
 
 Achumba,
 
 793 So.2d at 1015). The Fifth District in
 
 Achumba
 
 also held that the paternity issue could not be resolved in the wrongful death action. Ac
 
 humba,
 
 793 So.2d at 1016. The Fourth District in
 
 Daniels
 
 disagreed with
 
 Achum-ba
 
 and adopted the reasoning and holding of the Third District in
 
 Coral Gables Hospital, Inc. v. Veliz,
 
 847 So.2d 1027 (Fla. 3d DCA 2003), which held the opposite.
 
 [3]
 

 While recognizing the strong presumption that a child born during a marriage is the legitimate child of the husband, the Fourth District in
 
 Daniels
 
 held that “[i]f the presumption ... has any place in wrongful death survivorship questions, it may be overcome by clear and strong evidence.”
 
 Daniels,
 
 15 So.3d at 914 (emphasis omitted). The Fourth District concluded that it is “certainly
 
 not
 
 in the child’s best interest to blindly apply this presumption” to the issue of survivorship in wrongful death proceedings to prevent the personal representative from asserting claims on behalf of J.D. for the loss of his father. Thus, the court reversed and remanded the case to the trial court for a determination to be made in the wrongful
 
 *425
 
 death action of whether J.D. is a “surviv- or” of Daniels under the provisions of section 768.18(1).
 
 Id.
 

 [4]
 

 ANALYSIS
 

 Standard of Review
 

 The questions presented in this ease are pure questions of statutory law. Thus, this Court’s review is de novo.
 
 Kephart v. Hadi,
 
 932 So.2d 1086, 1089 (Fla.2006). In this analysis, legislative intent is the polestar by which the Court is guided, and “[t]o discern legislative intent, a court must look first and foremost at the actual language used in the statute.”
 
 Larimore v. State, 2
 
 So.3d 101, 106 (Fla.2008). Accordingly, we look first to the actual text of the statutory provisions at issue. “[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.”
 
 Holly v. Auld,
 
 450 So.2d 217, 219 (Fla.1984) (quoting
 
 A.R. Douglass, Inc. v. McRainey,
 
 102 Fla. 1141, 137 So. 157, 159 (1931));
 
 see also Fla. Dep’t of Envtl. Prot. v. ContractPoint Fla. Parks, LLC,
 
 986 So.2d 1260, 1265 (Fla.2008). “If, however, the language of the [statute] is ambiguous and capable of different meanings, this Court will apply established principles of statutory construction to resolve the ambiguity.”
 
 Barco v. School Bd. of Pinellas County,
 
 975 So.2d 1116, 1122 (Fla.2008) (citing
 
 Gulf stream Park Racing Ass’n, Inc. v. Tampa Bay Downs, Inc.,
 
 948 So.2d 599, 606 (Fla.2006)). With these principles in mind, we turn to the statutes at issue.
 

 Discussion
 

 The statutes at issue are found in the “Florida Wrongful Death Act,” which is codified in sections 768.16-768.26, Florida Statutes (2005). Section 768.21(1), Florida Statutes, provides that in a wrongful death action, “[e]ach survivor may recover the value of lost support and services from the date of the decedent’s injury to her or his death, with interest, and the future loss of support and services.” § 768.21(1), Fla. Stat. (2005). Minor children “may also recover for lost parental companionship, instruction, and guidance and for mental pain and suffering from the date of the injury.” § 768.21(3), Fla. Stat. Section 768.18(1) defines “survivor” to include the decedent’s children and, “when partly or wholly dependent on the decedent for support or services, any blood relatives.” § 768.18(1), Fla. Stat. That section further states that the definition of “survivor”
 

 includes the child born out of wedlock of a mother, but not the child born out of wedlock of the father unless the father has recognized a responsibility for the child’s support.
 

 § 768.18(1), Fla. Stat. The estate contends that the statute refers to the biological father, an interpretation of the statute that was also adopted by the Fourth District. Conversely, Dr. Greenfield and St. Mary’s Medical Center contend that the reference to “father” in the statute means the legal father, defined as the husband of the woman who gives birth, if the woman is in fact married at the time. They contend that the decedent must be declared to be the “legal father” in a separate proceeding before a survivor’s claim may be
 
 *426
 
 brought in a wrongful death action for a child born out of wedlock of the father. The district court concluded that the statute requires only proof that the decedent is the biological father of the child, the father was not married to the mother at the time of the child’s birth (“out of wedlock of the father”), and the decedent has recognized responsibility for support.
 

 The Legislature did not define the word “father” in chapter 768. “Where, as here, the legislature has not defined the words used in a [statute], the language should be given its plain and ordinary meaning.”
 
 School Bd. of Palm Beach County v. Survivors Charter Schs., Inc.,
 
 3 So.3d 1220, 1233 (Fla.2009) (alteration in original) (quoting
 
 Fla. BiHhr-Related Neurological Injury Comp. Ass’n v. Fla. Div. of Admin. Hearings,
 
 686 So.2d 1349, 1354 (Fla.1997)). It is “ ‘appropriate to refer to dictionary definitions when construing statutes’ in order to ascertain the plain and ordinary meaning of the words used there.”
 
 Survivors,
 
 3 So.3d at 1233 (quoting
 
 Barco,
 
 975 So.2d at 1122). The first definition for “father” that appears in
 
 Merriam Webster’s Collegiate Dictionary
 
 is “a man who has begotten a child.”
 
 Merriam Webster’s Collegiate Dictionary
 
 424 (10th ed. 1999). Thus, one recognized meaning of the word “father” is the biological father — a man who has begotten a child. However, as Dr. Greenfield and St. Mary’s contend, the word “father” can also refer to the man who is married to the woman when the child is conceived and born. Because section 768.18(1) does not define “father” for purposes of the wrongful death act, and the word appears to be capable of several different meanings, a level of ambiguity exists in the statute that justifies our further investigation into the purpose and intent of the enactment.
 
 See Barco,
 
 975 So.2d at 1123.
 

 Because we must determine if the phrase “out of wedlock of the father” contained in section 768.18(1) was intended to refer to the biological father of a child born to a man not married to the mother, even though the mother was married to another man at the time of conception and birth, it is necessary to consider the expressed legislative intent in enactment of the wrongful death act. The Legislature set forth the intent underlying the Florida Wrongful Death Act in section 768.17, Florida Statutes. That provision states:
 

 Legislative Intent. — It is the public policy of this state to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer. Sections 768.16-768.26 are remedial and shall be liberally construed.
 

 § 768.17, Fla. Stat. (2005). Therefore, the intent of the act is to shift the losses of survivors to the wrongdoer. Section 768.17 further mandates that the wrongful death act shall be liberally construed in aid of accomplishing that intent. Section 768.18(1) requires that for a child to be a survivor of a man who is not married to the mother, the man must have acknowledged the responsibility of support. If the decedent has recognized responsibility for support of the child, that loss falls directly on the child — and is the type of loss that is intended to be shifted to the wrongdoer.
 

 We also take note that prior to the enactment of the Florida Wrongful Death Act in 1972, the Florida Law Revision Commission undertook a study and in 1969 issued its report titled
 
 Recommendation and RepoH on Proposed Revision ofFlori-da Wrongful Death and Survival Statutes
 
 .
 
 [5]
 
 In the final recommendation section
 
 *427
 
 of the report, the commission recommended that the Legislature replace the then-existing wrongful death law with a comprehensive wrongful death act that is remedial in nature. The report also recommended that the Act be liberally interpreted to further justice, and should allow recovery by survivors including “a spouse and all blood relatives dependent in whole or in part upon the decedent.”
 
 Id.
 
 at 42. Proposed section 768.18 of the Florida Wrongful Death Act was, in fact, enacted substantially as recommended by the commission.
 
 See
 
 ch. 72-35, § 1, at 174, Laws of Fla. We note that section 768.18(1) of the act provides that “blood relatives” of the decedent may recover damages if they are partly or wholly dependent on the decedent for support; and it is immediately after this reference to blood relatives that section 768.18(1) refers to children born out of wedlock of a father who has recognized a responsibility of support. Thus, based on the text of the section, the blood tie between the survivor and the decedent is a significant factor in determining who falls within the definition of “survivors” for purposes of a wrongful death action.
 

 In light of the stated legislative intent underlying the Florida Wrongful Death Act — that losses are to be shifted from the survivors to the wrongdoer and that the act is to be liberally construed to effect that intent — and in light of the text of section 768.18(1), we conclude that the biological child of a man not married to the mother may claim survivor damages in a wrongful death action so long as it is established that the decedent is the biological parent and that he acknowledged responsibility for support. The Fourth District correctly noted that “[t]he statute does not require a legal determination of paternity. It merely requires recognition by the biological father of a responsibility of support.”
 
 Daniels,
 
 15 So.3d at 912.
 
 [6]
 
 We agree, and also conclude that a formal declaration of paternity under chapter 742 is not required by section 768.18(1) in order for the child to be determined to be a survivor under the wrongful death act.
 
 [7]
 

 
 *428
 
 A second question presented in this case is whether the factual determination of whether J.D. is a survivor under section 768.18(1) may be made in the wrongful death action. We agree with the Fourth District that whether a claimant is a survivor under the provisions of section 768.18(1) is a factual determination to be made in the wrongful death action. First, section 768.18(1) expressly authorizes survivor claims in a wrongful death action on behalf of a child born out of wedlock of the father. In so doing, the statute does not require that the decedent be formally declared to be the father in a separate action under chapter 742, Florida Statutes, which sets forth procedures for formal determinations of paternity. Section 768.18(1) only requires that the decedent be the biological father and that he has recognized a responsibility for the child’s support. Second, contrary to the contentions of Dr. Greenfield and St. Mary’s, chapter 742 does not preempt or prohibit the determination of parentage in a wrongful death action solely for the purposes of a survivor’s claim in a wrongful death action.
 

 The question of whether an individual is a man’s offspring has been litigated in contexts other than proceedings under chapter 742. We held in
 
 Kendrick v. Everheart,
 
 390 So.2d 53 (Fla.1980), that a declaratory judgment action under chapter 86, Florida Statutes, may be brought for determining paternity. We explained in
 
 Kendrick
 
 that chapter 742 “was enacted in abrogation of the common law in order to convert the father’s moral obligation to provide child support to a legal obligation and in order to relieve the public of the need to provide support for the child.”
 
 Id.
 
 at 56. We further explained that “[t]he determination of paternity is made only incidentally to enable the achievement of the statute’s purposes.”
 
 Id.
 
 We held in
 
 Kendrick
 
 that a putative father could litigate his paternity separately in a declaratory judgment action “where such adjudication is necessary to the determination of existing rights or duties between parties to an actual controversy or dispute.”
 
 Id.
 
 at 58. We stated:
 

 This Court has already observed the fact that judicial determinations of paternity occur in contexts other than in a paternity proceeding brought under chapter 742. See the discussion in
 
 Gammon v. Cobb,
 
 335 So.2d at 265-67.
 
 A paternity determination has been permitted in these other contexts where it was a necessary incident to the adjudication of the ultimate relief sought in the particular proceeding involved.
 

 Id.
 
 at 59 (emphasis added).
 

 In
 
 Gammon v. Cobb,
 
 335 So.2d 261 (Fla.1976), we held unconstitutional that part of section 742.011, Florida Statutes (1975), that allowed only unmarried women the right to bring an action for support based on paternity of a biological father who is not the husband.
 
 Id.
 
 at 268.
 
 [8]
 
 In so holding, this Court had occasion to discuss proceedings involving paternity other than proceedings under chapter 742. We stated that
 

 the State of Florida has engaged in numerous classifications
 
 without the confines of Chapter 712,
 
 Florida Statutes, permitting an illegitimate child to derive support from its natural father, irrespective of the marital status of its mother at the time of its conception, either directly during the father’s lifetime
 
 or indirectly through recovery of compensation from the father’s employer or from a tortfea-sor causing the death of the father.
 

 
 *429
 

 Gammon,
 
 335 So.2d at 267 (emphasis added). Thus, we have already acknowledged the propriety of establishing a child’s parentage outside of proceedings under chapter 742 “irrespective of the marital status of the mother” for purposes of recovery of support under the wrongful death statute.
 
 Id.
 

 [9]
 

 In the instant case, the decedent’s estate seeks adjudication of the issue of whether Daniels was J.D.’s father solely for purposes of wrongful death claims in the wrongful death action, where the adjudication is necessary to determine the existing rights of the parties in that context, as anticipated in
 
 Kendrick
 
 and
 
 Gammon.
 
 Based on the foregoing, we conclude that the determination of whether a child qualifies as a “survivor” under section 768.18(1) may be made in a wrongful death action, and the statute does not require a separate action brought under chapter 742 to formally establish paternity.
 

 Finally, Dr. Greenfield and St. Mary’s contend that J.D.’s cause of action for damages arising from wrongful death had not accrued at the time of Daniels’ death because there was no established legal relationship between J.D. and Daniels at that time. However, the biological tie, if proven, would have been present between Daniels as biological father and J.D. as his child on the day J.D. was born — whether or not a formal adjudication of paternity had been made. Similarly, Daniels’ recognition of responsibility for J.D.’s support— one of the statutory requirements for bringing a survivor claim for a child born out of wedlock of the father — would also have occurred before Daniels’ death. Accordingly, we hold that a formal adjudication of a legal relationship between J.D., as survivor, and Daniels, as the biological father, made before his death is not a prerequisite for a cause of action under chapter 768 for a child born out of wedlock of the father. If, on remand, it is proven that J.D. is Daniels’ biological child for whom Daniels recognized a responsibility for support, J.D.’s survivor’s claim would have vested at Daniels’ death based on those facts, without the need for a formal adjudication of a legal relationship being made prior to his death.
 

 CONCLUSION
 

 Based on the foregoing, we approve the decision in
 
 Daniels v. Greenfield
 
 and, accordingly, disapprove the decision in Ac-
 
 humba
 
 to the extent it is inconsistent with this opinion. Accordingly, this cause is remanded to the trial court for further proceedings consistent with this opinion. We do not reach the issue of whether the DNA testing that was done in this case is admissible to prove that Shea Daniels is the biological father of J.D., a matter that has not been fully litigated in the circuit court. Therefore, on remand, that issue is not foreclosed.
 

 It is so ordered.
 

 CANADY, C.J., and PARIENTE, LEWIS, QUINCE, and PERRY, JJ., concur.
 

 POLSTON, J., concurs in result.
 

 [1]
 

 . Section 768.18(1), Florida Statutes, provides as follows:
 

 (1) "Survivors'' means the decedent's spouse, children, parents, and when partly or wholly dependent on the decedent for support or services, any blood relatives and adoptive brothers and sisters. It includes the child born out of wedlock of a mother, but not the child born out of wedlock of the father unless the father has recognized a responsibility for the child’s support.
 

 § 768.18(1), Fla. Stat. (2005).
 

 [2]
 

 . St. Mary’s joined in the motion and amended motion for partial summary judgment.
 

 [3]
 

 . In 2003, the Third District in
 
 Veliz
 
 certified conflict with
 
 Achumba, see Veliz,
 
 847 So.2d at 1028, but review was voluntarily dismissed.
 
 See Coral Gables Hosp., Inc. v. Veliz,
 
 857 So.2d 195 (Fla.2003).
 

 [4]
 

 . While the district court noted that there is "ample evidence” to overcome the presump- ■ tion that J.D. is the biological child of his mother’s husband rather than Daniels, the court recognized that the issue had not been fully litigated in the trial court and remanded for a final determination to resolve the issue of whether J.D. qualifies as a survivor of Shea Daniels under the requirements of section 768.18(1).
 
 Daniels,
 
 15 So.3d at 914.
 

 [5]
 

 . The report indicates that the Florida Law Revision Commission was created by the 1967 Legislature, §§ 13.90-13.996, Florida Statutes (1967), to study the law for needed
 
 *427
 
 reforms.
 
 See
 
 Florida Law Revision Commission,
 
 Recommendation and Repon on Proposed Revision of Florida Wrongful Death and Survival Statute
 
 3 (Dec. 1969) (available at Fla. State Archives, ser. 19, carton 197, Tallahassee, Fla.).
 

 [6]
 

 . As the Fourth District also concluded in
 
 Daniels,
 
 because a determination that J.D. is a survivor for purposes of the wrongful death act does not affect his legitimacy, it does not undermine any existing relationship he has with Willie Washington, his mother’s former husband.
 
 Daniels,
 
 15 So.3d at 912. The Fourth District distinguished between a determination of paternity and a determination of whether J.D. is a "survivor” under the statute, and stated:
 

 The statute [§ 768.18(1) ] does not require a legal determination of paternity. It merely requires recognition by the biological father of a responsibility of support. There is no presumption of legitimacy within the statute which would preclude [J.D.] from his ability to claim loss based upon his surviv-orship status. Thus, the statute appears to benefit the child by permitting recovery from the biological father without undermining the relationship that the child might have with a "legal father.”
 

 Id.
 
 For this same reason, the husband of J.D.’s mother is not an indispensable party to this wrongful death action.
 

 [7]
 

 . Dr. Greenfield and St. Mary's also contend that J.D. cannot qualify for survivor benefits relating to children born out of wedlock because he was born in wedlock — while his mother was married to a man other than Shea Daniels. However, the statute specifically refers to a child "born out of wedlock
 
 of the father."
 
 § 768.18(1), Fla. Stat. (emphasis added). This provision does not refer to the marital status of the mother but, instead, refers to the marital status of a biological father who, at the time of the child’s birth, was not married to the child’s mother.
 

 [8]
 

 . Section 742.011, Florida Statutes, was amended in 1986 to allow either a mother or a putative father to bring an action to determine paternity.
 
 See
 
 ch. 86-220, § 150, Laws of Fla.
 

 [9]
 

 . We also note that the Second District held that a child’s paternity could be determined in a declaratory judgment action brought by a bank in its capacity as trustee for a trust established to benefit the "children” or "descendants” of the decedent.
 
 See Doe v. Suntrust Bank,
 
 32 So.3d 133, 137 (Fla. 2d DCA 2010),
 
 review denied,
 
 No. SC10-860, 2010 WL 3585064 (Fla. Sept. 14, 2010);
 
 see also B.B. v. P.J.M.,
 
 933 So.2d 57, 59 n. 3 (Fla. 1st DCA 2006) ("Some examples of court proceedings that could establish the identity of a child’s father would include: a father or a child's right to recover civil damages under the wrongful death statute, section 768.21(4), Florida Statutes_”).